IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**June 6, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 11-1750

_____

WEST VIRGINIA EMPLOYERS' MUTUAL INSURANCE COMPANY d/b/a
BRICKSTREET MUTUAL INSURANCE COMPANY, and MICHAEL D. RILEY,
WEST VIRGINIA INSURANCE COMMISSIONER, Petitioners

v.

THE BUNCH COMPANY, Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Tod J. Kaufman, Judge
Civil Action No. 10-AA-113

REVERSED AND REMANDED

_____

Submitted: April 16, 2013
Filed: June 6, 2013

Jeffrey M. Wakefield, Esq.                    Paul T. Farrell, Jr., Esq.
Erica M. Baumgras, Esq.                       Green, Ketchum, Bailey
Flaherty Sensabaugh Bonasso PLLC              Walker, Farrell & Tweel
Charleston, West Virginia                     Huntington, West Virginia
Counsel for Petitioner Brickstreet           Counsel for Respondent


Andrew R. Pauley, Esq.                        Alex J. Shook, Esq.

Office of the West Virginia
Insurance Commissioner
Charleston, West Virginia
Counsel for Petitioner
Insurance Commissioner

D.C. Offutt, Jr., Esq.
Offutt Nord Burchett, PLLC
Huntington, West Virginia
Counsel for Amicus Curiae
West Virginia Mutual Insurance
Company, Inc.

Hamstead, Williams & Shook, PLLC
Morgantown, West Virginia
Counsel for Respondent

Jill Cranston Bentz, Esq.
Mychal Sommer Schulz, Esq.
Jacob A. Manning, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia
Counsel for Amicus Curiae
West Virginia Insurance Federation

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE KETCHUM, deeming himself disqualified, did not participate in the decision of this case.
JUDGE CLAWGES sitting by temporary assignment.

SYLLABUS BY THE COURT

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4[(g)] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 SE.2d 518 (1996).

2. "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 SE.2d 518 (1996).

3. "Any challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33-20-5(d) (1967) (Repl. Vol. 2006) in a proceeding before the Insurance Commissioner." Syl. Pt. 3, *State ex rel. Citifinancial, Inc. v. Madden*, 223 W.Va. 229, 672 S.E.2d 365 (2008).

4. "The presumption of statutory compliance for approved insurance rates set

forth in West Virginia Code § 33-6-30(c) (2002) (Repl. Vol. 2006) may only be rebutted in a proceeding before the Insurance Commissioner." Syl. Pt. 4, *State ex rel. Citifinancial, Inc. v. Madden*, 223 W.Va. 229, 672 S.E.2d 365 (2008).

5. By design, insurance rate setting involves the prospective use of proposed rates which are calculated based on cost projections derived from past experience combined with a reasonable expectation of future losses and expenses.

6. The administrative costs and expenses specifically authorized by the legislative rate making rule to be included in insurance premiums, such as agent commissions and policy acquisition or servicing expenses, are prospective in nature. *See* 85 C.S.R. § 8-11.2.

LOUGHRY, Justice:

Petitioners West Virginia Employers' Mutual Insurance Company doing business as BrickStreet Mutual Insurance Company ("BrickStreet") and Michael D. Riley,[1] the West Virginia Insurance Commissioner ("Commissioner") appeal from the October 31, 2011, order of the Circuit Court of Kanawha County, which reversed and vacated the Commissioner's July 9, 2010, administrative order upholding previously approved rates. At issue below was an assertion by the respondent, the Bunch Company ("Bunch"), that the premium it paid to BrickStreet wrongly included a charge for an agent commission. Given that BrickStreet directly wrote and issued the workers' compensation insurance policy at issue, Bunch contends that the rate component which pertained to an agent commission should not have been factored into its premium. In explanation of using the same premium charge for its direct and agent written business, BrickStreet maintains that it incurs increased expenses related to the servicing of its non-agent business.[2] After carefully reviewing the record as developed in this case in conjunction with applicable statutes, regulations, and case law, we are firmly convinced that the trial court committed error in reversing and vacating

---

[1]When this case was filed, Jane Cline was the Insurance Commissioner. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the current Insurance Commissioner was automatically substituted as a party to this case.

[2]In explanation of its retention of the "commission" component of the premium in connection with its "direct write" business that is otherwise transmitted to its agents, BrickStreet, through stipulations and by affidavit, attributes this retention "to acquisition and servicing costs [required] to offset the increased expenses in administering direct policies through the performance of a number of services."

1

the decision of the Commissioner.  Accordingly, the decision of the  circuit court is reversed.

## I.  Factual and Procedural Background

The protracted history of this case began with the respondent's filing of an amended class action complaint in the Circuit Court of Cabell County on October 15, 2007.[3] Through that complaint, Bunch alleged that when BrickStreet became its insurer on January 1, 2006,[4] a charge for the expense of an agent commission was wrongly included in the workers' compensation premium BrickStreet charged Bunch and other similarly situated insureds.  Denying it charged any insured an expense for an agent commission, BrickStreet argued that the plaintiffs' claims were barred by the filed rate doctrine[5] and that their exclusive remedy lay with the Commissioner.  Presented with cross motions for summary judgment, the Circuit Court of Cabell County, the Honorable John L. Cummings, rejected the need for additional factual development.  Viewing this matter as one rooted in law, the circuit court reasoned that "the sole issue is whether a component of the premium is lawful

[3]In addition to Bunch, Aero-Fab, Inc., was a named plaintiff in that action.

[4]From January 1, 2006, to June 30, 2008, BrickStreet was the sole source of workers' compensation insurance in this state.

[5]This doctrine, which is federal in origin, mandates that "'the rate of the carrier duly filed is the only lawful charge.'"  *AT&T v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222 (1998) (quoting *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97 (1915)).  Asserting the applicability of the filed rate doctrine, BrickStreet argued that Bunch was precluded from challenging the premium rates given their approval by the regulatory agency with exclusive jurisdiction over insurance premiums in this state.  After observing that West Virginia had yet to extend the filed rate doctrine to matters of insurance regulation, Judge Cummings declined to apply the doctrine to this case.

or unlawful."[6]  After considering the stipulated facts submitted by Bunch and BrickStreet along with the pleadings and argument of counsel, Judge Cummings decided that BrickStreet had wrongfully charged Bunch a commission as part of its premium without incurring a specific agent-related expense.[7]

Shortly after Judge Cummings issued his ruling, this Court issued its decision in *State ex rel. Citifinancial v. Madden*, 223 W.Va. 229, 672 S.E.2d 365 (2008).[8]  Central to the *Citifinancial* decision was this Court's recognition of the Legislature's clear disapproval of "judicial intrusion into issues of insurance rate setting."[9]  *Id.* at 236, 672 S.E.2d at 372. In light of specific legislative amendments to the insurance statutes, we held in *Citifinancial*

---

[6]Judge Cummings expressly determined that "[r]esolution of this matter does not require an actuarial review of whether BRICKSTREE[T]'s rates are fair and reasonable."

[7]In its November 3, 2008, order, Judge Cummings ruled that BrickStreet was violating state regulatory law by charging Bunch an agent-related expense as part of its premium which was never incurred.  *See* 85 C.S.R. § 8-8.1.c (2007) (providing that premium charge may include "reasonable provision for expenses related to the administration costs . . . including underwriting expenses, such as commissions to agents and brokers"). In making this ruling, Judge Cummings wholly disregarded the stipulation that BrickStreet incurred increased administrative costs in connection with the servicing of its direct-written policies.

[8]In *Citifinancial*, we expressly rejected the plaintiff's contention that circuit courts were given concurrent jurisdiction over issues of insurance rate making through the provisions of the Consumer Credit Protection Act.    *See* 223 W.Va. at 238, 672 S.E.2d at 374.

[9]As the Legislature made clear with amendments to the insurance statutes, the Commissioner has been reposed with authority over rate making and form approval.  *See Citifinancial*, 223 W.Va. at 236, 672 S.E.2d at 372 (discussing 2002 amendments to W.Va. Code § 33-6-30).

3

that there is a presumption of statutory compliance and validity which applies to approved insurance rates. *See id.* at 235, 672 S.E.2d at 371. Of critical import to the respondent in this case was our holding in *Citifinancial* that any challenge to an approved insurance rate has to be raised in an administrative proceeding before the Commissioner pursuant to West Virginia Code § 33-20-5(d). 223 W.Va. at 231, 672 S.E.2d at 367, syl. pt. 3. And, only after such an administrative challenge has transpired, can judicial review occur. *Id.* at 239, 672 S.E.2d at 375.

BrickStreet, in reliance on the holdings of *Citifinancial*, sought relief from the ruling of Judge Cummings.[10] By ruling entered on March 5, 2009, Judge Hustead granted relief to BrickStreet, reversing and vacating the order of Judge Cummings. Judge Hustead ruled that Bunch was seeking to challenge an established insurance rate and that this Court was clear in *Citifinancial* that circuit courts do not have the authority to review rate-setting matters until those matters have first been challenged before the Commissioner.

Complying with the dictates of *Citifinancial,* Bunch filed a consumer complaint with the Commissioner on February 17, 2010, reasserting its allegation that BrickStreet was unlawfully charging an agent commission for its "direct-write" business.[11] In responding to

---

[10]*See* W.Va. R. Civ. Pro. 60(b)(5).

[11]This refers to policies issued without the use of an insurance agent.

4

the complaint, BrickStreet stated that it had not charged Bunch an agent commission. BrickStreet explained that an insured's premium is based on multiple components, one of which is the loss cost multiplier ("LCM").[12] Included in the LCM are component expenses for the costs of acquisition and service fees. For any of its insureds who do not have agents, BrickStreet maintains there are enhanced administrative needs that it is responsible for handling. For the additional services it provides to its "direct write" clients, BrickStreet is compensated through the premium components of acquisition costs and services fees.

The Commissioner denied the relief sought by Bunch through its administrative ruling issued on July 9, 2010. As part of that ruling, the Commissioner concluded:

> 5. The Insurance Commissioner finds there is no factual dispute concerning the filing and approval of the rates and forms of BrickStreet . . . and as a matter of law the rate filings and BrickStreet's use of the same should be upheld.
>
> 6. The Insurance Commissioner finds that the rates charged by BrickStreet were reasonable in relation to the benefits provided due to the fact that certain administrative costs and/or expenses are incurred by BrickStreet in handling direct written business which would otherwise be handled by appointed agents.

---

[12]The use of the LCM is specifically mandated by West Virginia Code § 23-2C-18(b) (2010) (directing that "[a]n insurer shall file its rates by filing a multiplier or multipliers to be applied to prospective loss costs").

Addressing the statutory presumption that attaches to approved insurance rates,[13] the Commissioner found that Bunch had not "provided . . . [any] information that would in fact rebut such a presumption."

Bunch appealed the Commissioner's ruling to the Circuit Court of Kanawha County and by ruling issued on October 31, 2011, Judge Kaufman reversed and vacated the Commissioner's order. The circuit court found that (1) the Commissioner erred by allowing BrickStreet to charge Bunch a commission when no correlative expense had been incurred; (2) the Commissioner erred in finding that the subject insurance rates were reasonable; and (3) BrickStreet could not rely on the affidavit of Mr. Mahler's[14] due to the lack of opportunity for cross-examination.

In reliance on Judge Kaufman's ruling, Bunch has filed a new class action complaint in the Kanawha County Circuit Court, through which it seeks monetary relief for BrickStreet's unlawful charge of an agent commission as part of its workers' compensation

---

[13]*See* W.Va. Code § 33-6-30(c) (2011). This statutory presumption, as we noted in *Citifinancial*, was included as part of the amendments enacted in 2002 to counteract this Court's "misinterpretation and misapplication of the law that was expressed in the holding of . . . *Mitchell v. Broadnax*." 223 W.Va. at 235 n.20, 672 S.E.2d at 371 n.20.

[14]Mr. Mahler was a senior vice president for BrickStreet with thirty years experience in the insurance industry.

premium.[15]  That action has been stayed pending the outcome of this appeal.

## II.  Standard of Review

Our review of this administrative appeal is governed by the same statutory standards that applied to the circuit court's review of this matter.  As we held in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996):

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4[(g)][16] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the

[15]That action was filed on December 19, 2011.

[16]Pursuant to the Administrative Procedures Act, in reviewing an administrative decision

> [t]he court may affirm the order or decision of the agency or remand the case for further proceedings.  It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedures; or
> (4) Affected by other error of law; or
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W.Va. Code § 29A-5-4(g) (2012).

7

findings to be clearly wrong." 196 W.Va. at 590, 474 S.E.2d at 520 (footnote added).

We further explained in syllabus point two of *Muscatell* that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*."

With these standards in mind, we proceed to determine whether the circuit court committed error in reversing and vacating the decision of the Commissioner.

## III. Discussion

From the outset, the first of three circuit court judges to consider this case framed the issue in terms of insurance rate setting: "Resolution of this matter does not require an actuarial review of whether BRICKSTREE[T]'s rates are fair and reasonable. Rather, the sole issue is whether a component of the premium is lawful or unlawful." In *Citifinancial,* this Court addressed the parameters of judicial involvement with regard to matters of insurance rate setting. *See* 223 W.Va. at 239, 672 S.E.2d at 375. Because the petitioners in the case before us maintain that the trial court's rulings are in conflict with *Citifinancial*, we undertake a review of our holdings in that decision, as well as the reasoning which undergirds those rulings.

8

## A. *Citifinancial* Decision

What the plaintiffs argued in *Citifinancial* was that the courts of this state were authorized under the West Virginia Consumer Credit Protection Act ("CCPA")[17] to examine and rule upon the issue of whether approved insurance rates were excessive or unreasonable. *See* 223 W.Va. at 236, 672 S.E.2d at 372. Before rejecting this contention, we scrutinized the statutory language of both the insurance statutes and the CCPA. Based on amendments to the insurance statutes enacted in direct response to *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000),[18] we determined in *Citifinancial* that the Commissioner's authority over matters of insurance rate making and insurance-related forms was beyond dispute.

In reaching that decision, we initially looked to the CCPA and discerned that the Legislature had pronounced that whether the charges for credit insurance in a consumer transaction "'are reasonable in relation to the benefits shall be determined by the Insurance Commissioner of this State.'" 223 W.Va. at 235, 672 S.E.2d at 371 (quoting W.Va. Code § 46A-3-109(a)(4)). In addition to this unmistakable grant of rate making authority, we observed that "the Legislature gave the Commissioner express and exclusive rule-making authority for the purpose of implementing all of the Act's [CCPA's] provisions that relate to insurance." *Id.* (referencing W.Va. Code § 46A-3-109(c)).

---

[17]*See generally* W.Va. Code §§ 46A-3-101 to -117 (2006 & Supp. 2012).

[18]*See supra* note 13.

Turning our focus to the insurance statutes in *Citifinancial*, we recognized the overarching requirement that insurance rates "may not be 'excessive, inadequate or unfairly discriminatory.'" 223 W.Va. at 235, 672 S.E.2d at 371 (quoting W.Va. Code § 33-20-3(b)). As we explained, "[o]nce a particular insurance rate has been approved by the Commissioner, a presumption arises that such rates 'are in full compliance with the requirements of this chapter [chapter 33].'" 223 W.Va. at 235, 672 S.E.2d at 371 (quoting W.Va. Code § 33-20-3(b)). Despite this presumption, we observed that "the Commissioner has the continuing authority to disprove an insurance rate for noncompliance with the requirements of chapter thirty-three, article twenty" and that "an aggrieved person or organization has the right to demand a hearing for the purpose of challenging any insurance filing as being noncompliant with the statutory requirements that govern insurance rate setting." 223 W.Va. at 236, 672 S.E.2d at 372 (citing W.Va. Code § 33-20-5(c), (d)).

Essentially seeking to bypass the mechanism created for challenging insurance rates and filings, the consumer in *Citifinancial* argued that the Legislature had authorized the courts to address *in the first instance* the statutory presumption of compliance that applies to approved insurance rates.[19] In the course of discussing the myriad reasons for disallowing circuit courts to invade the highly specialized administrative realm of insurance rate

[19]Given that the CCPA was enacted in 1974 and the statutory presumption of compliance was not enacted until 2002, this argument proved indefensible. *Citifinancial*, 223 W.Va. at 236 n.23, 672 S.E.2d at 372 n.23.

making,[20] we made the following observation regarding the amendments to our insurance laws enacted in 2002: "The new provisions, including the presumption, were expressly adopted to curb what the Legislature perceived as judicial intrusion into issues of insurance rate setting." 223 W.Va. at 236, 672 S.E.2d at 373.

After carefully scrutinizing the CCPA provisions against the insurance statutes in *Citifinancial*, we concluded that, despite sanctioning a cause of action for the recovery of excess insurance charges in consumer credit transactions, "the Legislature did not authorize the circuit courts to invade the jurisdiction of the Commissioner and conduct a reexamination of insurance rates previously approved by the Commissioner." *Id*. at 231, 672 S.E.2d at 367, syl. pt. 2, in part. We held in syllabus point three of *Citifinancial* that "[a]ny challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33-20-5(d) (1967) (Repl. Vol. 2006) in a proceeding before the Insurance Commissioner." 223 W.Va. at 231, 672 S.E.2d 367. In an attempt to provide additional clarity, this Court determined in syllabus point four of *Citifinancial* that "[t]he presumption of statutory compliance for approved insurance rates set forth in West Virginia Code § 33-6-30(c) (2002) (Repl. Vol. 2006) may only be rebutted

---

[20]Included in the litany were the related goals of achieving uniformity, stability, and predictability with regard to insurance rates. *See Citifinancial*, 223 W.Va. at 237, 672 S.E.2d at 373; *see also* W.Va. Code § 33-6-30(b)(7) (including statement "[t]hat it is in the best interest of the citizens of this state to ensure a stable insurance market" as part of legislative findings which address construction of insurance policies).

in a proceeding before the Insurance Commissioner."[21] 223 W.Va. at 231, 672 S.E.2d at 367. Affirming the viability of judicial review with regard to such administrative challenges in *Citifinancial* , we explained that "[a]ny ruling issued by the Commissioner on the issue of the reasonableness of insurance rates or compliance with statutory provisions is a final order that is subject to the provisions of the Administrative Procedures Act ('APA')." 223 W.Va. at 239, 672 S.E.2d at 375.

Returning to the case before us, and specifically the rulings issued by Judge Kaufman, the petitioners argue that two of the circuit court's three rulings violate the holdings of *Citifinancial* and flagrantly contradict the regulatory scheme established by the Legislature for handling insurance matters.[22]  Specifically, the petitioners assert that the circuit court engaged in a reexamination of approved insurance rates and wrongly supplanted its opinion for that of the Commissioner in an area that has been expressly delegated to the Commissioner's expertise.  In addition, the petitioners maintain that the trial court's ruling demonstrates a critically flawed understanding of how insurance rates are calculated, filed, and approved in this state.

---

[21]"[T]he burden for disproving the validity of such rates is placed on the entity who seeks to set the rates aside."  *Citifinancial* 223 W.Va. at 239, 672 S.E.2d at 375.

[22]The third assignment of error involves an evidentiary ruling that has no connection to the *Citifinancial* decision.

**B. Charge for "Agent Commission"**

Addressing the circuit court's conclusions of law in turn, we first examine the ruling that the Commissioner erred by allowing BrickStreet to charge Bunch a commission when no correlative actual expense had been incurred. In making this ruling, the trial court demonstrated two fundamental misconceptions with regard to the schematics of insurance law. First, in looking at the legislative rule that addresses what charges may be included in an insurance premium, the trial court wrongly interpreted the term "expense" as necessarily referencing expenses that BrickStreet "ha[d] actually incurred." Second, the circuit court wholly disregarded the prospective nature of insurance rate setting.

After recognizing the Commissioner's authority to issue the legislative rule which "govern[s] ratemaking and premium collection,"[23] the trial court proceeded to partially quote the rule. The ratemaking rule under discussion originally appeared at 85 C.S.R. § 8-8.1.c., and as the trial court related, it provided:

> In addition to said loss cost base rates,[24] the premium rate charged by the Mutual may also include . . . a reasonable provision for expenses related to the administration costs of the Mutual, including underwriting expenses, such as commission to agents and brokers. . . .[25]

---

[23]*See* W.Va. Code § 23-2C-18(g) (2005).

[24]The loss cost base rates are set by the National Council on Compensation Insurers ("NCCI") from actuarially determined loss costs.

[25]The rule continued as follows:

(continued...)

13

*Id.* (footnotes added).  Since October 31, 2007, the legislative rule that governs insurance rate making has provided:

> The base rates charged by the private carriers may also include: (1) a reasonable provision for expenses related to the administration costs of the private carrier, including under-writing expenses, such as commissions to agents and brokers, *other policy acquisition or servicing expenses,* premium taxes, assessments, surcharges and fees, catastrophe reinsurance expenses, expenses associated with rating organizations, loss adjustment expenses not included in the loss costs, such as claims defense expenses, claims administration expenses, and other related expenses; (2) a reasonable profit and contingency provision to contribute to the private carrier's surplus; and (3) all other rate making components consistent with industry practices.  All such provisions shall be subject to the provisions of W.Va. Code § 33-20-4.  Any filing made to establish or amend a loss cost multiplier or multipliers which accounts for expenses is effective until such time as the private carrier makes another filing to adjust the same.

---

[25](...continued)
> *other policy acquisition or servicing expenses*, premium taxes, assessments and fees, catastrophe reinsurance expenses, expenses associated with advisory organizations and/or rating organizations, loss adjustment expenses not included in the loss cost base rates, such as claims defense expenses, claim administration expenses, and other related expenses; (2) a reasonable profit and contingency provision to contribute to the Mutual's surplus; and (3) all other rate making components consistent with industry practices.  All such provisions shall be subject to approval by the insurance commissioner.

85 C.S.R. § 8-8.1.c (emphasis supplied).

85 C.S.R. § 8-11.2 (emphasis supplied).[26]

Adopting the position that no expense can be factored into an insurance premium until an actual outlay of funds has transpired, the trial court reasoned as follows: "West Virginia law permits BrickStreet to charge a premium for expenses incurred. However, it is contrary to West Virginia law to charge a premium for an expense never incurred."[27] In allowing BrickStreet to charge for a non-incurred agent commission, the trial court opined that the Commissioner "failed to enforce its legislative rule." Not only are each of these conclusions erroneous, but they are wholly lacking in foundation.

In reasoning that an insurance premium may only include charges for expenses that have actually been incurred, the trial court demonstrated a crucial misunderstanding of the rate setting process. As BrickStreet explained,

> It is . . . an incorrect interpretation of the regulation [85 C.S.R. §§ 8-8 or 8-11] that for BrickStreet to request, or the Insurance Commissioner to approve, a certain component of the LCM to be factored into the premium rate, the insurer must have already incurred that expense. At the time an insurer submits a rate filing and the Insurance Commissioner approves a prospective insurance premium, the insurer has not yet incurred any such

---

[26]Ending before the italicized language, the trial court viewed the first four quoted lines of this provision as the only pertinent part of the rule for purposes of its ruling.

[27]As the petitioners observe, the trial court does not cite any law for this proposition.

expense.[28]

By design, insurance rate setting involves the prospective use of proposed rates which are calculated based on cost projections derived from past experience combined with a reasonable expectation of future losses and expenses. *See* W.Va. Code § 33-20-4 (2011). As the rate making statute demonstrates, the use of anticipated but currently unrealized expenses is part of the structure of our insurance law. Included in the provision requiring the use of the LCM is the direction that "[a]n insurer shall file its rates by filing a multiplier or multipliers to be applied to *prospective loss costs* that have been filed by the designated advisory organization[29] on behalf of the insurer. . . ." W.Va. Code § 23-2C-18(b) (emphasis and footnote added).

The statutory reference to "prospective loss costs" necessarily requires insurers to anticipate what their future loss costs will be. *See id.* In the same manner that loss costs are projected for rate making purposes, the administrative costs and expenses specifically authorized by the legislative rate making rule to be included in insurance premiums, such as agent commissions and policy acquisition or servicing expenses, are prospective in nature. *See* 85 C.S.R. § 8-11.2. Simply put, because insurance rates must be filed and approved

---

[28]Expanding on this notion of only using incurred expenses, BrickStreet stated: "[I]t would not be possible for the Insurance Commissioner to approve a different LCM for each insured depending on whether the insurer will actually incur each and every administrative cost or underwriting expense in writing or renewing a particular policy."

[29]The referenced advisory organization is the NCCI. *See supra* note 24.

16

prospectively, insurers are required to prognosticate their administrative costs. Those administrative costs include, *inter alia*, commissions on policies written through agents as well as acquisition and policy servicing expenses for policies that are directly written by the insurer.

In ruling that the Commissioner wrongly allowed BrickStreet to charge for an expense that was never incurred, the trial court erred as an initial matter in viewing the regulatory list of what may be included in an insurance premium as limited to those expenses that have already been incurred. As discussed above, the insurance rate making and rate approval process are rooted in prospective cost calculations rather than actual expenditures. Secondarily, the trial court erred in limiting its analysis to agent commissions in considering the administrative costs that may be factored into an insurance premium. In citing to the rate making regulation in its ruling, the trial court stopped just short of the language that specifically authorizes the inclusion of expenses related to "other policy acquisition or servicing expenses." 85 C.S.R. § 8-11.2. That language, rather than the authority to charge an agent commission, should have been what the trial court examined to determine whether the Commissioner properly applied the provisions of its legislative rule on rate making.[30] As

---

[30]The Commissioner was fully apprised that not all of BrickStreet's clients had agents. Because insurers are not permitted to charge a separate premium rate to their clients who lack an agent, the Commissioner considers the amount of an insurer's agent versus directly written business in approving insurance rates. Initially, BrickStreet's non-agent business was twenty percent; as of 2010, that figure was reduced to ten percent.

17

we discuss in section III. C. of this opinion, the Commissioner determined that the premium BrickStreet charged Bunch was reasonable in relation to the benefits provided. That determination was linked to the Commissioner's finding that there were administrative expenses, authorized by legislative rule, in connection with BrickStreet's management of Bunch's directly written business. Accordingly, we conclude that the trial court erred in ruling that the Commissioner failed to enforce the rate making rule. *See* 85 C.S.R. § 8-11.2.

Another error that the trial court made with regard to the issue of agent commissions was its finding that BrickStreet had admitted that it wrongly charged Bunch a commission. In the subject ruling, Judge Kaufman concluded that BrickStreet had stipulated that it had charged some insureds for the expense of an agent commission that it did not incur. A review of the stipulations demonstrates the fallacy of this conclusion. Explaining its retention of the premium otherwise attributable to agent commissions, BrickStreet stipulated: "[F]or policies written direct, that portion of the premium collected is attributed to acquisition and servicing costs to offset the increased expenses in administering direct policies through the performance of a number of services." Rather than admitting to charging Bunch for an expense it did not incur, the stipulations indicate that BrickStreet explained its basis for retaining the fees at issue. The trial court's ruling that BrickStreet charged Bunch an expense that was wholly in violation of the legislative rate making rule is erroneous as the rule expressly provides for the inclusion of expenses for acquisition and

18

servicing costs within the premium.[31]  *See* 85 C.S.R. § 8-11.2.

### C.  Reasonable Rates and Mahler Affidavit

The trial court discredited the Commissioner's finding that "the rates charged by Brickstreet were reasonable in relation to the benefits provided due to the fact that certain administrative costs and/or expenses are incurred by Brickstreet in handling direct business which would otherwise be handled by appointed agents."  In almost summary fashion, the trial court concluded that this finding "is clearly wrong in light of the record."  However, only by rejecting the affidavit of Harry E. Mahler, that was introduced as evidence in the initial proceeding filed before Judge Cummings and never challenged by Bunch,[32] could Judge Kaufman conclude that the record was entirely devoid of evidence to support the Commissioner's finding.[33]

Seeking to minimize the evidentiary basis of the Mahler affidavit, the trial court

---

[31]At no point in its ruling, did the trial court address this expressly approved expense component of the legislative rule.

[32]Despite the fact that Mr. Mahler's affidavit was taken on March 14, 2008, more than seven months before Judge Cummings issued his grant of summary judgment, Bunch never sought to depose Mr. Mahler or to introduce any evidence to dispute his averments.

[33]In his affidavit, Mr. Mahler explains in detail the multiple responsibilities that BrickStreet undertook for its direct write business, separately addressing the duties it handled in regards to new direct business; renewal of direct business; and managing direct business. In the concluding paragraph, the affiant avers:  "These services performed by BrickStreet are the same if not more than what an appointed agent does for an insured."

19

dismissed the statements contained therein as inherently lacking in credibility due to the lack of cross-examination. The rules of civil procedure clearly allow for affidavits to be opposed by deposition or counteraffidavit upon the filing of same in support of a motion for summary judgment.[34] *See* W.Va. R. Civ. P. 56(e). The record in this case indicates that Bunch never objected to the filing of the affidavit on the grounds that Mr. Mahler lacked the requisite personal knowledge of the subject matter;[35] never sought to depose Mr. Mahler regarding the averments in his affidavit; and never submitted any counter evidence to dispute the affiant's statements. *See Reed v. Orme*, 221 W.Va. 337, 343-44, 655 S.E.2d 83, 89-90 (2007) (upholding trial court's reliance on affidavit in granting summary judgment where appellants failed to put forth any evidence to contradict matters set forth in affidavit). Concluding that the trial court wrongly discarded the affidavit of Mr. Mahler as evidence in this case, we find that the trial court erred in ruling that there was no evidence in the record to support the Commissioner's finding that BrickStreet incurred certain administrative expenses in handling its direct written business that would otherwise be handled by agents.

Proceeding to the ultimate issue of whether the insurance rates at issue were

---

[34]Mr. Mahler's affidavit was submitted in support of BrickStreet's motion for summary judgment on June 20, 2008, while the matter was pending before Judge Cummings. It was also included in the proceedings before the Commissioner as BrickStreet attached the same to its answer to the consumer complaint.

[35]*See supra* note 14.

reasonable, the petitioners and the amicus curiae[36] strenuously maintain that the trial court ignored this Court's holdings in *Citifinancial* and improperly injected itself into a rate making matter expressly delegated to the Commission. We agree. The Legislature, in no uncertain terms, has reposed the authority for rate making matters in the Commission. *See* W.Va. Code § 33-6-30(c). As discussed above at length, the amendments to the insurance statutes enacted in the aftermath of *Broadnax* left no question that rate making was not a matter intended for the courts.

What Bunch takes issue with is the fact that insureds who have an agent and those who do not were paying the same premium rate for their workers' compensation coverage with Brickstreet. Yet, as noted above, Brickstreet is not permitted to charge its insureds any premium rate other than the singular rate that is approved by the Commissioner.[37] For Bunch's contention that it was wrongly charged an agent commission to have merit, the rate making regulation would have to *only* allow an agent commission as an authorized expense component of the premium. Critically, that regulation is more expansive than just providing for the recovery of agent commissions, and clearly includes expense components such as acquisition and servicing costs–the expenses for which

---

[36]The West Virginia Insurance Federation and the West Virginia Mutual Insurance Company, Inc. lodged briefs with the Court in support of the petitioners' position in this case.

[37]As noted above, the fact that BrickStreet's business included both agent and direct write business was fully considered in approving the premium rates at issue.

21

BrickStreet asserted its entitlement to retain the moneys at issue. *See* 85 C.S.R. § 8-11.2.

At any rate, it is not up to this Court to identify the component charges that can be included in an insurance premium. That decision has been left to the Commissioner. And the Commissioner, upon its review of the consumer complaint filed by Bunch, found no basis for disturbing the presumption that the approved rates were valid. *See* W.Va. Code § 33-6-30(c). We find it noteworthy that Judge Kaufman, during the hearing on this matter, was quick to recognize two fundamental concerns presented by this case: encroachment on the regulatory rate making process and separation of powers. Notwithstanding the trial court's appreciation of these issues, it proceeded to breach established precepts pertaining to both of those juridical areas. Specifically failing to heed this Court's recognition in *State ex rel. Crist v. Cline*, 219 W.Va. 202, 632 S.E.2d 358 (2006), "that we . . . give deference to [the Insurance Commissioner's] interpretation, so long as it is consistent with the plain meaning of the governing statute," the trial court substituted its judgment for that of the Commissioner on a matter that clearly fell within the rate making area of the Commissioner's expertise. *Id.* at 211, 632 S.E.2d at 367. As we recognized in *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995), "[a]n inquiring court--even a court empowered to conduct *de novo* review--must examine a regulatory interpretation of a statute by standards that include appropriate deference to agency expertise and discretion." *Id.* at 582, 466 S.E.2d at 433. Ignoring the deference that the Commissioner was entitled to in connection with the interpretation of its own regulation, the trial court encroached upon a

22

matter that has been expressly delegated to the executive branch of our state government.[38]

*See Citifinancial*, 223 W.Va. at 237, 672 S.E.2d at 373.  In doing so, the trial court neglected

to regard this Court's admonition in *Citifinancial* that "the uniformity of regulation that the

Legislature has established by delegating all matters involving rate making and rate filings

to the Commissioner is certain to be infringed if circuit courts or jurors are permitted to

second guess the reasonableness of rates previously approved by the Commissioner."  *Id.*

## D.  Lack of Hearing

Addressing Bunch's protestations to this Court regarding the lack of discovery

and the denial of a hearing,[39] BrickStreet observes that the entirety of Bunch's complaint

before the Commissioner was the legality of being charged an agent commission.  In filing

its consumer complaint, BrickStreet asserts that Bunch did not request either a hearing or the

---

[38]While it is incumbent upon this Court to refrain from the politics of insurance rate making, this Court encourages persons aggrieved by the regulatory policies and decisions of the Commissioner to rely upon the political process for accountability purposes.  *See Appalachian Power,* 195 W.Va. at 588, 466 S.E.2d at 439 ("We are not at liberty to affirm or overturn the [Tax] Commissioner's regulation or decision merely on the basis of our agreement or disagreement with his policy implications"); *see also State ex rel. Carenbauer v. Heckler*, 208 W.Va. 584, 589, 542 S.E.2d 405, 410 (2000) ("While the reasons for separating the judiciary from politics are many and varied, there can be no question that the goal of removing politics and its attendant imbroglios from the judicial process is necessary to the proper functioning of our judicial system.").

[39]*See* W.Va. Code § 33-2-14 (2011) (providing for appeal from order of Commissioner or order refusing hearing).

23

need to take discovery.[40] And, after BrickStreet filed its answer to the complaint, Bunch did not file anything additional with the Commissioner through which it sought an opportunity to engage in discovery or to have a hearing.[41] In its brief to this Court, Bunch actually scoffed at the alleged request of petitioners that this matter be remanded to the Commissioner for a hearing.[42] In reviewing the briefs of the parties, the petitioners repeatedly and uniformly requested that the circuit court's order be reversed and the Commissioner's July 9, 2010, ruling be reinstated. The only reference to an additional hearing before the Commissioner is in BrickStreet's *hypothetical* discussion of how the circuit court should have addressed its concern regarding Mr. Mahler's affidavit. Referring to the actions of Judge Kaufman and *not* what it was requesting of this Court, Brickstreet stated: "But even if the Affidavit of Mr. Mahler could not be considered because it was not cross-examined by Bunch in the Insurance Commissioner proceeding, the proper remedy was to remand the case

---

[40]In the section of the complaint entitled "**REASON FOR COMPLAINT/RELIEF REQUESTED**" Bunch stated only as follows: "Brickstreet is charging The Bunch Company for an agent commission. The Bunch Company does not have an agent. This is a clear violation of law." While the attachment of an amended complaint is noted, there is no specific request for a hearing within the consumer complaint itself.

[41]In reviewing the transcript of the hearing before Judge Kaufman on October 18, 2011, counsel for Bunch readily acknowledged that the decision of whether to hold a hearing or allow discovery was at the Commissioner's discretion.

[42]In Bunch's appeal brief, it states: "It is ironic that the Petitioners now want to have a hearing when they had ample opportunity to do so at the initial administrative level. . . . Simply put, all administrative remedies have been exhausted. . . . As such, this Honorable Court should uphold the Circuit's Court's determination."

24

to the Commissioner, rather than to reverse and vacate the July 9, 2010, order."[43]

Moreover, the need for additional discovery in this matter was twice rejected by Judge Kaufman. By order entered on July 12, 2011, the circuit court denied Bunch's motion to supplement the record, stating:

> Petitioner [Bunch] has not provided this Court with good cause or any irregularities that occurred before the Insurance Commissioner. . . [T]he record has sufficient evidence from both the Insurance Commissioner and the Circuit Court of Cabell County. Any further discovery this case is costly and unnecessary in light of the record provided at this time.

Bunch filed a second motion to supplement the record on October 24, 2011, which the circuit court similarly denied on the grounds that the record contained sufficient evidence. Given the clear legal posture of the issue presented in this case, we agree with the circuit court that there was no need for additional discovery for purposes of a ruling in this matter.

With regard to Bunch's argument that it was never provided the opportunity to have a hearing before the Commissioner, we recognize that the Commissioner has the authority pursuant to legislative rule to refuse a request for a hearing upon the determination that a hearing "[w]ould serve no useful purpose." 114 C.S.R. § 13-3.3.b. Given the clear

---

[43]Similarly, the West Virginia Mutual Insurance Company in its amicus brief admonished the actions of Judge Kaufman, stating that "the Circuit Court should have abstained from its intrusion into policy matters and either affirmed the decision of the Insurance Commissioner or remanded the case back to the Insurance Commissioner for further deliberation."

legal framework of this case and the failure of Bunch to articulate anything that was in need of being brought to the Commissioner's attention that was not a part of the pleadings or the record in this matter, we do not find that the Commissioner's decision that a hearing was not necessary in this particular matter was an abuse of its discretion. At the same time, however, we are troubled by the concern raised before this Court during oral argument that the Commissioner, as a matter of routine, is determining that hearings are unnecessary.

In those instances that involve an alleged deviation from approved rate filings, the Commissioner readily acknowledges that factual disputes may exist which require an administrative hearing. We wholly agree with the Commissioner that this case did not present any factual disputes. And, while we have no reason to criticize the Commissioner's decision not to hold a hearing in this case, we strongly encourage the Commissioner to hold hearings whenever necessary to address both factual disputes and legitimate challenges to the application of this state's insurance statutes and regulations. By holding at least periodic hearings on matters–even routine rate making matters–the Commissioner would arguably present itself as an administrative body intent on giving the citizens of this state an opportunity to be heard and a forum for presenting issues that may be worthy of further consideration and review.

Cognizant of the need to balance the scope of judicial review against the proper level of administrative deference, we commented in *Appalachian Power:* "This Court has

stressed the importance of liberally permitting administrative agencies to carry out legislative dictates; we have recognized that aggressive judicial intervention would disrupt agency processes and negate the legislative body's legitimate delegation of authority." 195 W.Va. at 588, 466 S.E.2d at 439. At the same time, however, we cautioned that "deference 'cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by' the Legislature." *Id.* at 588-89, 466 S.E.2d at 439-40. Mindful of these competing concerns, the guidance we have offered the Commissioner on the issue of holding hearings is provided with a healthy respect for the importance of both observing and preserving the separation of powers intended by the framers of our state government.

## IV.  Conclusion

Based on the foregoing, we reverse the decision of the Circuit Court of Kanawha County and remand this matter for purposes of entering an order reinstating the July 9, 2010, ruling of the Insurance Commissioner.

Reversed and remanded.