IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TIMOTHY HALL,**
**Complainant Below, Petitioner**

**vs.) No. 25-ICA-94**   (W. Va. Off. of the Insurance Commissioner Case Nos. 24-IC-159993 and -159995)

**NATIONWIDE INSURANCE COMPANY**
**and MICHAEL FALLON, FALLON INSURANCE AGENCY,**
**Respondents Below, Respondents**

**and**

**ALLAN L. MCVEY,**
**INSURANCE COMMISSIONER OF**
**THE STATE OF WEST VIRGINIA,**
**Respondent**

**FILED**
**September 30, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Timothy Hall appeals the February 4, 2025, order of Respondent Allan L. McVey, in his official capacity as the West Virginia Insurance Commissioner ("Commissioner"), denying petitioner's request for a hearing on his first-party administrative complaint against Respondents Nationwide Insurance Company ("Nationwide"), Michael Fallon, and Fallon Insurance Agency ("Fallon Insurance"). The Commissioner and Mr. Fallon filed individual responses.[1] Petitioner filed a reply. Nationwide and Fallon Insurance did not participate in this appeal.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Commissioner's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 29, 2024, petitioner filed a five-page complaint with the Offices of the Insurance Commissioner ("OIC"). The complaint asserted that, in July 2021, petitioner's wife applied for employment with the local school district, and that "within two weeks of the official close of the application period," his wife's application "was being openly

---

[1] Petitioner is self-represented. The Commissioner is represented by Jeffrey C. Black, Esq., and Andrew S. Ryan, Esq. Mr. Fallon is self-represented.

discussed within the community at large." According to petitioner, only three school board employees and one employee supervisor had access to his wife's personal information. Petitioner alleged that Mr. Fallon "disseminated my wife's information and mentioned it to me for some reason." Petitioner accused the school district of releasing his wife's information to the public, asserting that Mr. Fallon informed him that the information was disseminated by the school district's supervisor.[2]

Petitioner also claimed that after the school board's database was accessed and his wife's information disclosed, several of the couple's credit card accounts were breached and fraudulent charges were made or attempted. Petitioner was then required to take steps to reverse the charges, which admittedly did not involve Mr. Fallon, his agency, or Nationwide.

The complaint made claims against Nationwide, Mr. Fallon, and Fallon Insurance Agency to the OIC. Specifically, the complaint alleged that his wife's personal information was breached by the school district, and as a result, Mr. Fallon and Fallon Insurance gained access to the information. It was further alleged that the local school district and the West Virginia Department of Education had withheld information and made false statements to the West Virginia Attorney General's Office on this issue. Petitioner claimed that the West Virginia Attorney General's Office had not conducted a proper investigation of these violations. He believed that Mr. Fallon and his agency were at the center of the data breach. Shortly thereafter, petitioner discussed the case with representatives of the OIC. At that time, he levied additional allegations against the West Virginia State Police, a circuit court judge, and certain law firms located in West Virginia.

Petitioner also stated that his Nationwide life insurance policy was changed without notice, and that he had learned through his own investigation that a piece of mail addressed to him was returned to Nationwide. In response, Nationwide used a database called Accurint (operated by LexisNexis) to find petitioner's current address. However, Nationwide's search returned an address that petitioner claims was not associated with him.

The petitioner's complaint was investigated by the OIC's Legal Division. The investigation revealed that petitioner had previously filed suit against several individuals in circuit court regarding the alleged "leak" of his personal information by the school district supervisor and alleged wrongdoing by the presiding judge and participating law firms. *See generally Hall v. Ensor*, No. 22-ICA-200, 2023 WL 8680714 (W. Va. Ct. App. Dec. 15, 2023) (memorandum decision) (affirming the circuit court's orders dismissing the case with prejudice and denying petitioner's motion to amend). The OIC included

---

[2] According to the administrative record, at some point prior to the petitioner's filing of a complaint with the OIC, he also filed a complaint with the West Virginia Attorney General's Office alleging similar accusations regarding the dissemination of his wife's employment application information.

interviews of Mr. Fallon and a Nationwide representative, as well as a discussion of the matter with other state agencies.

Ultimately, the OIC's investigation found no evidence that Mr. Fallon or Fallon Insurance obtained personal information about petitioner or his wife through insurance business activities, but rather, Mr. Fallon indicated that he heard in the community that petitioner's wife had applied for employment with the school district. Similarly, during the investigation Nationwide informed the Commissioner that after its outgoing mail to petitioner was returned, it followed its company policy to attempt to find its insured's correct address. Nationwide explained that it distributes this policy to its customers and informs them that it may collect personal information about them from affiliates and other companies.

At the conclusion of its investigation and review of the complaint, the OIC determined that the investigation did not establish that Mr. Fallon, Fallon Insurance, or Nationwide had violated the state's insurance laws and regulations. The OIC informed petitioner of this determination in a letter dated October 31, 2024. In the letter, the OIC also informed petitioner that it did not have jurisdiction over the school district or its employees, the West Virginia State Police, the West Virginia Attorney General, state circuit court judges, or lawyers and law firms based in West Virginia. The OIC's letter noted that pursuant to West Virginia Code § 33-2-19 (2007), the OIC's investigations are confidential, and therefore the OIC could not share the details of its investigation with petitioner. The letter concluded by informing petitioner that no further action would be taken on the complaint, but that petitioner had the right to file a written demand for a hearing. *See* W. Va. Code § 33-2-13 (1957); W. Va. Code R. § 114-13-3 (2003).

On December 1, 2024, petitioner filed a nine-page written demand for a hearing. In support of this demand, petitioner reiterated the allegations he previously made against all parties, as well as claimed that their actions violated state and federal criminal laws regarding wire, mail and computer fraud, and cybercrime. Additionally, petitioner asserted that, pursuant to West Virginia § 33-2-3a(a) (2007), the Commissioner "has the authority to conduct investigations whenever he or she has cause to believe that a violation of any provision of this chapter or of chapter twenty-three of this code has been or is being committed," which includes the ability to subpoena witnesses, take evidence, and compel the production of documents or records pursuant to West Virginia Code § 33-2-4 (2003). Petitioner further alleged that the Commissioner had not properly investigated the complaint because the Commissioner had failed to properly coordinate with law enforcement, viz., the West Virginia Attorney General, West Virginia State Police, and the U.S. Attorney's Office. *See* W. Va. Code § 33-2-4(g) (2003) (stating that the Commissioner is not prohibited from "providing information or receiving information from any local, state, federal or international law-enforcement authorities . . . from complying with subpoenas or other lawful process in criminal proceedings or other action by the state . . . or from taking action as may otherwise be provided in this article.").

The Commissioner denied petitioner's demand for a hearing by order dated February 4, 2025. In that order, the Commissioner found that pursuant to West Virginia Code § 33-2-13 and West Virginia Code of State Rules § 114-13-3.3, the Commissioner has sole discretion to determine whether a demand for hearing is warranted, and that he may decline to grant a hearing when it would involve ruling on matters outside of the Commissioner's statutory authority, or the hearing would serve no useful purpose.[3]

The Commissioner also found that Nationwide had not violated state law, and that the Commissioner was not charged with regulating every aspect of an insurance company's business, which included Nationwide's policy and procedure for determining a policy holder's address. Similarly, it was determined that to the extent alleged by the complaint, Nationwide's use of Accurint does not violate the Unfair Trade Practices Act, West Virginia Code §§ 33-11-1 to -10; therefore, there was no useful purpose for a hearing on the complaint.[4]

Moreover, the Commissioner noted that his office is an administrative agency whose authority is a creature of statute and, pursuant to West Virginia Code §§ 33-2-3a and -4, the Commissioner had no authority over petitioner's claims raised against the school district or its employees, the West Virginia State Police, the West Virginia Attorney General, state circuit court judges, or lawyers and law firms based in West Virginia. The Commissioner also determined that it did not have authority to enforce the state and federal criminal statutes raised by petitioner.

---

[3] West Virginia Code § 33-2-13 states, in part, "[t]he commissioner may call and hold hearings for any purpose deemed necessary by him for the performance of his duties." Pursuant to West Virginia Code of State Rules § 114-13-3.3:

> When the commissioner is presented with a demand for a hearing . . . he or she shall conduct a hearing[.] However, if the commissioner shall determine that the hearing . . . [w]ould involve an exercise of authority in excess of that available to him or her under law; or . . . [w]ould serve no useful purpose, the commissioner shall . . . enter an order refusing to grant the hearing as requested, incorporating therein his or her reasons for such refusal.

[4] In a parallel finding, set forth in the February 4, 2025, order, the Commissioner noted that it was within his discretion to file an administrative action against Mr. Fallon (as an insurance producer), and that, if such action were filed, pursuant to West Virginia Code § 33-2-13, petitioner would not be a party to such a proceeding. Thus, the Commissioner concluded that petitioner did not have standing to request a hearing. Because we have affirmed the Commissioner's denial of petitioner's demand for a hearing on other grounds, we do not need to address the propriety of that finding herein.

4

For these reasons, the Commissioner concluded that a hearing would serve no useful purpose and denied petitioner's demand for a hearing. This appeal followed.

Our review of this matter is governed by the State Administrative Procedures Act, and it provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021).

On appeal, petitioner advances two assignments of error. Upon review, we find it appropriate to consolidate and restate those arguments for the purposes of this appeal. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal). Restated, petitioner contends that the Commissioner erred when he did not grant petitioner a hearing on the merits of his complaint.

To support his argument, petitioner contends that the OIC's investigation was cursory and incomplete. Specifically, petitioner claims that the investigation was inadequate because the OIC failed to follow his explicit directive to request critical documents, perform database audits, review internal communications between parties, obtain records of the parties' prior complaints and investigations, interview specific individuals, and to follow all investigative leads that naturally flowed from the investigation. Petitioner maintains that these investigative shortcomings constitute reversible error because the OIC failed to rely upon the Commissioner's investigative

5

authority under West Virginia Code § 33-2-4 to effectuate petitioner's requests.

Petitioner further argues that the language from West Virginia Code § 33-2-3(a) (1993)[5] and the full text of West Virginia Code § 33-2-3a(a) (2007)[6] mandate that the Commissioner ensure every complaint is thoroughly investigated by the OIC to determine whether insurance laws or regulations have been violated. According to petitioner, had the OIC complied with his directives and properly evaluated the evidence, his allegations of wrongdoing and criminal conduct by the parties would have been easily substantiated. We disagree and find petitioner's arguments on this issue unavailing.

At their core, petitioner's arguments all rest on a single theme—his steadfast dissatisfaction with the outcome of the OIC's investigation. However, petitioner's dissatisfaction is not itself sufficient to establish error and does not constitute an abuse of discretion on appeal. At best, petitioner's arguments merely offer an alternative application of the law to the facts with an invitation to this Court to look at the record and reach a more favorable conclusion. We decline this invitation. It is soundly established that on appeal, "[a]n appellate court does not reweigh the evidence[.]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007); *Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL 7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (noting that an appellate court will not reweigh the evidence presented below on appeal). Further, "an agency's determination of matters within its area of expertise is entitled to substantial weight." *Princeton Cmty. Hosp. v. State Health Plan.*, 174 W. Va. 558, 564, 328 S.E.2d 164, 171 (1985). We are also mindful that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996); *see also* Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently).

---

[5] West Virginia Code § 33-2-3(a) provides, in part, that "The commissioner shall enforce the provisions of this chapter . . . and perform the duties required thereunder[.]"

[6] West Virginia Code § 33-2-3a(a) states:

In addition to the authority granted to the fraud unit created in article forty-one of this chapter and to the workers' compensation fraud and abuse unit previously transferred to the commissioner pursuant to section one-b, article one, chapter twenty-three of this code, the commissioner has the authority to conduct investigations whenever he or she has cause to believe that a violation of any provision of this chapter or of chapter twenty-three of this code has been or is being committed.

In this case, the record establishes that the OIC complied with its statutory obligations by completing its investigation of the underlying complaint and determining that no violations had been committed. Also, the details of the investigation were set forth fully by the Commissioner in the order on appeal. While we agree with petitioner that the Commissioner has a duty to ensure complaints are investigated, we disagree with petitioner's inference that he had the authority to dictate the manner in which the OIC investigated his complaint, or that his interpretation of the evidence usurps the judgment of the OIC and the Commissioner. Simply put, the plain language of West Virginia Code §§ 33-2-1 to -24 expressly grants the Commissioner the sole authority to investigate and rule on insurance-related complaints. This renders petitioner's arguments on this issue untenable. Moreover, after reviewing the record, we cannot conclude that there was error in the OIC's investigation or its determinations regarding petitioner's complaint.

Petitioner's final argument is that the Commissioner's interpretation and application of West Virginia Code § 33-2-13 and West Virginia Code of State Rules § 114-13-3.3 to the facts of this case is an abuse of discretion. According to petitioner, the Commissioner narrowly construed those authorities, improperly imposed a heightened standard of proof, and ignored substantial evidence, which resulted in the erroneous conclusion that no violations had occurred and deprived petitioner of his right to redress for the acts of Nationwide and others. We find no merit in these contentions.

To begin, we address petitioner's contention that the Commissioner replaced the preponderance of the evidence standard with a heightened burden of proof. In his brief, petitioner claims that throughout the order on appeal, the Commissioner repeatedly states that petitioner failed to establish "'conclusive evidence' or 'definitive proof' of violations." However, after extensive review of the Commissioner's order, we find that it contains no such observations or synonymous findings. In fact, the order is silent regarding any applicable burden of proof. As this Court has previously noted, "'where an order of a court of record is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that such court performed its duty in every respect as required by law.' Syl. Pt. 2, *State v. J.S.*, 233 W. Va. 198, 757 S.E.2d 622 (2014)." *Mazgaj v. Irby*, No. 24-ICA-395, 2025 WL 1778814, at *4 (W. Va. Ct. App. June 27, 2025) (memorandum decision). Thus, we wholly reject petitioner's argument as it completely misrepresents the record.

Regarding petitioner's remaining arguments on this issue, we conclude that the Commissioner did not err in denying petitioner's demand for a hearing on the merits of his complaint. Both West Virginia Code § 33-2-13 and West Virginia Code of State Rules § 114-13-3.3 grant the Commissioner discretionary authority in deciding whether to grant or deny hearing requests. In this case, it was determined that a ruling on certain claims in petitioner's complaint would exceed the Commissioner's statutory authority, and that a hearing on petitioner's remaining claims would serve no useful purpose. Critically, these bases are expressly permitted by Rule as grounds upon which the Commissioner may deny a hearing request. *See* W. Va. Code R. § 114-13-3.3. Indeed, the Supreme Court of Appeals

7

of West Virginia has held that the Commissioner is not required to grant a hearing on every complaint. *See Lightner v. Riley*, 233 W. Va. 573, 579-583, 760 S.E.2d 142, 148-152 (2014) (noting West Virginia Code § 33-2-13 and West Virginia Code of State Rules § 114-13-3.3 give the Commissioner discretion to deny hearing requests); *W. Va. Employers' Mut. Ins. Co. v. The Bunch Co.*, 231 W. Va. 321, 333, 745 S.E.2d 212, 224 (2013) ("the Commissioner has the authority pursuant to legislative rule to refuse a request for a hearing upon the determination that a hearing '[w]ould serve no useful purpose.' 114 C.S.R. §13-3.3.b"). Similarly, this Court has previously applied the same rationale to uphold the Commissioner's denial of a demand for a hearing. *See Tasker v. Agency Ins. Co.*, No. 23-ICA-83, 2023 WL 6290569, at *4 (W. Va. Ct. App. Sept. 26, 2023) (memorandum decision) (concluding that the Commissioner did not abuse his discretion in denying a hearing request on an administrative complaint where the relief sought exceeded the Commissioner's statutory authority and, thus, there was not a useful purpose for a hearing).

Here, the record establishes the Commissioner made the discretionary determination that no further action should be taken on petitioner's complaint because the OIC did not have jurisdiction over certain parties and allegations named in the complaint, and further because the evidence did not demonstrate that a violation of the state's insurance laws and regulations had occurred. After considering the appellate record, we cannot conclude that the Commissioner erred or abused his discretion by denying petitioner's demand for a hearing.

Accordingly, we find no error and affirm the Commissioner's February 4, 2025, order.

Affirmed.

**ISSUED:** September 30, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White