672 S.E.2d 365

**STATE of West Virginia ex rel. Citifinancial, Inc., Plaintiff Below, Petitioner,**

v.

**The Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County, Respondent,**

and

**Paul W. Lightner Defendant Below, Respondent.**

No. 34216.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2008.

Decided Dec. 10, 2008.

---

Thomas V. Flaherty, Flaherty, Sensabaugh & Bonasso PLLC, Charleston.

Charles J. Falletta, Jeffrey J. Greenbaum, Sills, Cummis & Gross, PC, Newark, New Jersey, Pro Hac Vice.

Debra Lee Hovatter, Angela Linn Beblo, Spilman, Thomas & Battle PLLC, Morgantown, Counsel for the Petitioner.

James G. Bordas, Jr., Christopher J. Regan, Jason E. Causey, Bordas & Bordas, PLLC, Wheeling, and Daniel F. Hedges, Mountain State Justice, Inc., Charleston, and Jonathan Bridges, Daniel H. Charest, Susman Godfrey LLP, Dallas, Texas, Pro Hac Vice, Counsel for Paul W. Lightner, Defendant Below, Respondent.

James D. McQueen, Jr., Frost Brown Todd LLC, Charleston, Counsel for Amicus Curiae, The American Financial Services Association and the Consumer Credit Industry Association.

Mary Jane Pickens, Office of the West Virginia Insurance Commissioner, Charleston, Counsel for Amicus Curiae, West Virginia Insurance Commissioner.

McHUGH, Senior Status Justice:[1]

Petitioner CitiFinancial, Inc. seeks a writ of prohibition to prevent the Circuit Court of Marshall County from enforcing its order of May 6, 2008, through which Petitioner's motion for partial summary judgment was denied. CitiFinancial argues that the trial court erred in refusing to dismiss claims asserted against Petitioner by Respondent Paul W. Lightner for alleged unreasonable and excessive credit insurance charges.[2] Based on its position that the West Virginia Insurance Commissioner ("Commissioner") has exclusive jurisdiction over matters involving insurance rates, CitiFinancial argues that these issues must be referred to and resolved by the Commissioner. Upon our careful review of this matter in conjunction with applicable statutory provisions, we determine that the trial court erred in not dismissing those claims pending against CitiFinancial for alleged unreasonable and excessive credit insurance charges. Accordingly, we grant the writ of prohibition sought by

CitiFinancial to prevent the enforcement of the denial of its motion for partial summary judgment.

## I. Factual and Procedural Background

In November 2002 CitiFinancial instituted a civil action against Respondent Lightner in the Circuit Court of Marshall County after Respondent defaulted on a $6,500 loan that he obtained from Petitioner.[3] In January 2004, Mr. Lightner filed an amended counterclaim through which he averred that CitiFinancial had violated the finance charge provisions of the West Virginia Consumer Credit Protection Act ("CCPA" or the "Act") [4] by charging unreasonable and excessive amounts for credit insurance [5] for two other loans he had obtained from CitiFinancial in 2001.[6] In a second amended counterclaim that Mr. Lightner filed on October 30, 2006, he sought to expand his claim for unreasonable and excessive credit insurance charges into a class action that would include additional individuals who borrowed funds from CitiFinancial over a fourteen-year period.[7]

After a protracted procedural history that included removal by CitiFinancial to federal district court and then remand to the circuit court, Respondent Lightner requested judicial approval of the class action he was seeking to bring.[8] On November 1, 2007, CitiFinancial filed a motion in opposition to Respondent's motion for class certification as well as motions seeking a dismissal,[9] par-

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Respondent Lightner avers that the credit insurance charges at issue are unreasonable and excessive because they exceeded the amounts allowed under West Virginia Code § 46A–3–109 (1998) (Repl.Vol.2006).

3. The loan was obtained in May 2002.

4. See W.Va.Code §§ 46A–3–101 to—117 (1981) (Repl.Vol.2006).

5. Mr. Lightner did not purchase any credit insurance in connection with this loan.

6. Both of these loans had been paid off by Mr. Lightner.

7. The class action was certified by order entered on May 12, 2008, and involves persons who purchased credit insurance from CitiFinancial, or its agents, between February 6, 1994, and February 13, 2008.

8. An amended motion for class certification was filed on October 8, 2007.

9. Dismissal was sought under Rule 19 of the West Virginia Rules of Civil Procedure under the theory that the insurance companies who issued the policies for the credit insurance made available by CitiFinancial (American Health and Triton) were indispensable parties. The trial court ruled that CitiFinancial had failed to make the requisite showings under Rule 19 to establish that the insurers were indispensable parties to the action.

tial summary judgment, or a stay pending an administrative proceeding. The trial court heard argument on the parties' motions on February 13, 2008, and its rulings are reflected in its order of May 6, 2008.[10] In that order, the trial court denied each of the alternative forms of relief sought by CitiFinancial.[11]

Through this original proceeding, CitiFinancial seeks a writ of prohibition to prevent the trial court from enforcing its denial of CitiFinancial's motion for partial summary judgment. Specifically, CitiFinancial seeks a dismissal of the claims pending against it that involve allegations of unreasonable and excessive credit insurance charges. As an alternative to this requested relief, Petitioner seeks a stay of the underlying matter until the Commissioner can make a determination regarding whether any of the credit insurance charges assessed by CitiFinancial against Respondent Lightner [12] were either excessive or unreasonable.

## II. Standard of Review

In deciding whether to issue a writ of prohibition where a trial court has allegedly exceeded its legitimate powers, the governing standard is set forth in syllabus point four of State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Against this standard, we proceed to consider whether the trial court erred in refusing to dismiss the claims related to the allegations of unreasonable or excessive credit insurance charges or in refusing to stay the underlying matter pending a resolution of this issue by the Commissioner.

## III. Discussion

When distilled, the argument raised by CitiFinancial is that as a middleman who merely collects the payment for credit insurance [13] pursuant to rates that have been approved by the Commissioner, it cannot be held liable under the CCPA for allegedly unreasonable and excessive credit insurance charges.[14] Based on statutory authority that

---

10. CitiFinancial observes that the trial court's order is verbatim of the draft order submitted by Mr. Lightner and notes that Judge Madden failed to articulate any reasoning or findings of fact from the bench to support his rulings. When Petitioner raised this issue in reference to the draft order prepared by Mr. Lightner, the trial court stated that the reasoning set forth in the draft order was consistent with his previously unexpressed thoughts.

11. While the trial court granted partial summary judgment to CitiFinancial on Respondent's claims for failure to give proper notice and collateral protection insurance, this relief resulted solely from Mr. Lightner's decision to abandon those respective claims.

12. Because the matter below is now a class action, these determinations will include similar claims raised by the individuals who are now named counterclaim plaintiffs in connection with the charges originally asserted solely by Respondent Lightner.

13. Credit insurance is a type of casualty insurance. See W.Va.Code § 33–1–10(e)(8) (2005) (Repl.Vol.2006).

14. We reject this argument without discussion as the cause of action authorized under the Act is clearly against the creditor as the entity who charges the excessive rates rather than against the insurer. See W.Va.Code § 46A–5–101(1), (3) (defining cause of action as against "creditor" and "person who made the excess charge").

authorizes a lender to collect an amount for credit insurance,[15] CitiFinancial argues that it is in full compliance with the CCPA provided it charges and collects amounts commensurate with the rates approved by the Commissioner. Moreover, because the Commissioner has exclusive regulatory jurisdiction over insurance rate setting, CitiFinancial contends that any determination as to whether a charge for insurance was unreasonable or excessive must be made as an initial matter by the Commissioner.

In response to these arguments, Respondent Lightner argues that while the Commissioner is statutorily charged with setting and thus determining the reasonableness of credit insurance rates in the first instance,[16] these rate determinations create a mere presumption of statutory compliance which can later be challenged in court. Emphasizing that the CCPA was enacted to protect consumers from creditors rather than the converse, Respondent Lightner challenges the contention of CitiFinancial that creditors who charge approved insurance rates are immune from liability under the CCPA, as well as the corollary contention that the courts lack jurisdiction with regard to matters involving the reasonableness of insurance rates.

In addressing the matters of first impression raised in this case, we are forced to examine whether issues concerning the reasonableness and/or excessiveness of insurance rates were intended to be determined in an administrative forum, a judicial forum, or a combination of both forums. We will undertake an analysis of the applicable statutes in an effort to glean how the insurance stat-utes were intended to interrelate with the CCPA. As a precursor to the analysis, however, we must first identify those statutes that must be reconciled to resolve the issues presented in this case.

### A. CCPA Statutes

The parties concur that the CCPA statute which governs the right of a creditor to include charges for credit insurance in a consumer transaction is West Virginia Code § 46A–3–109 (1998) (Supp.2008). Under authority of subsection (a)(2), a creditor such as CitiFinancial is permitted to contract for and receive charges for insurance as described in subsection (b). *See* W.Va.Code § 46A–3–109(a)(2).[17] Subsection (b)(3) specifies how a creditor is permitted to collect a charge for credit insurance:

> When the insurance is obtained or provided by or through a creditor,[18] the creditor may collect from the consumer or include as part of the cash price of a consumer credit sale or as part of the principal of a consumer loan or deduct from the proceeds of any consumer loan the premium or, in the case of group insurance, the identifiable charge. *The premium or identifiable charge for the insurance required or obtained by a creditor may equal, but may not exceed the premium rate filed by the insurer with the insurance commissioner....*

W.Va.Code § 46A–3–109(b)(3) (emphasis supplied and footnote added).

In addition to establishing that permissible insurance charges cannot be more than "the premium rate filed by the insurer with the insurance commissioner," the Act specifies

---

**15.** *See* W.Va.Code § 46A–3–109(a)(2), (b)(3).

**16.** *See* W.Va.Code § 46A–3–109(a)(4).

**17.** These provisions provide that:

(a) In addition to the sales finance charge or loan finance charge permitted by this chapter [article 46A, chapter 3], a creditor may contract for and receive the following additional charges in connection with a consumer credit sale or a consumer loan:

. . . .

(2) *Charges for insurance as described in subsection (b) of this section: Provided, That nothing contained in this section with respect to insurance in any way limits the power and*

*jurisdiction of the Insurance Commissioner of this state in the premises*[.]

W.Va.Code § 46A–3–109(a)(2) (emphasis supplied).

**18.** Respondent Lightner argues that this subsection does not provide the so-called "safe harbor" from liability that CitiFinancial seeks based on the trial court's finding that CitiFinancial did not "obtain or provide" the credit insurance at issue in this case. Without addressing the merits of the "safe harbor" argument, we observe that the record of this case demonstrates that the insurance at issue in this case was "provided ... through" CitiFinancial, the subject creditor with regard to the loans at issue. W.Va.Code § 46A–3–109(b)(3).

that charges for "other benefits, including insurance" must be "reasonable in relation to the benefits." *Id.*, W.Va.Code § 46A–3–109(a)(4). The Act is clear that "the determination of whether the charges therefor [insurance] are reasonable in relation to the benefits shall be determined by the Insurance Commissioner of this State." W.Va. Code § 46A–3–109(a)(4).

As a corollary to its clear grant of rate-making authority to the Commissioner, the Legislature gave the Commissioner express and exclusive rule-making authority for the purpose of implementing all of the Act's provisions that relate to insurance. West Virginia Code § 46A–3–109(c) provides:

> The Insurance Commissioner of this State shall promulgate legislative rules in accordance with the provisions of chapter twenty-nine-a [§§ 29A–1–1 et seq.] of this code to implement the provisions of this article relating to insurance and *the authority of the Insurance Commissioner to promulgate the rules is exclusive notwithstanding any other provisions of this code to the contrary.*

W.Va.Code § 46A–3–109(c) (emphasis supplied). Pursuant to this statutory authority, the Commissioner has promulgated rules that address, *inter alia*, the standards by which a determination is made concerning whether an insurance rate is "reasonable in relation to the benefits" that are provided. *See, e.g.,* C.S.R. § 114–61–6.2 (defining standard as being met by "loss ratio of not less than sixty percent or such other loss ratio as designated by the commissioner ..." for credit personal property insurance policies).

If a consumer is charged an amount in excess of what is permitted under the Act, the Legislature has created a remedy for such violations. Under authority of West Virginia Code § 46A–5–101 (1996) (Repl.Vol. 2006), "the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty *in an amount determined by the court* not less than one hundred dollars nor more than one thousand dollars." W.Va.Code § 46A–5–101(1) (emphasis supplied); *see also* W.Va. Code § 46A–5–101(3) (providing that "consumer is not obligated to pay a charge in excess of that allowed by this chapter, and if he has paid an excess charge he has a right to a refund"). Citing subsections (1) and (3) of West Virginia Code § 46A–5–101, Respondent Lightner asserts that CitiFinancial violated the CCPA by charging him amounts for credit insurance that violated the Act's requirement that such assessments be "reasonable in relation to the benefits" provided. W.Va.Code § 46A–3–109(a)(4). Consequently, he avers that such amounts were necessarily in excess of what CitiFinancial was statutorily permitted to charge him for credit insurance. *See* W.Va.Code § 46A–5–101(1), (3).

### B. Insurance Statutes

The parties are in agreement with regard to identifying the relevant insurance statutes. Only when questions arise concerning the interrelation of these insurance statutes with the Act's establishment of a cause of action for excessive insurance-related charges do the parties assume diametrically opposed positions.

The insurance statutes require that rates charged for casualty insurance,[19] which is the type of insurance at issue, may not be "excessive, inadequate or unfairly discriminatory." W.Va.Code § 33–20–3(b) (2006). Once a particular insurance rate has been approved by the Commissioner, a presumption arises that such rates "are in full compliance with the requirements of this chapter [chapter 33]." W.Va.Code § 33–6–30(c) (2002) (Repl.Vol.2006).[20] Notwithstanding previous

---

**19.** *See supra* note 13.

**20.** The statutory language creating the presumption of compliance was enacted in 2002 as part of amendments to West Virginia Code § 33–6–30 that were "specifically intended to clarify the law and correct a misinterpretation and misapplication of the law that was expressed in the holding of the Supreme Court of Appeals of West Virginia

in the case of Mitchell v. Broadnax, [208 W.Va. 36,] 537 S.E.2d 882 (2000)." W.Va.Code § 33–6–30(c). In *Broadnax*, this Court held, *inter alia*, that absent evidence that an insurer had adjusted an insurance policy premium in a downward fashion to reflect the inclusion of an "owned but not insured" exclusion, the exclusion was not enforceable under West Virginia Code § 33–6–31(k) which expressly ties exclusions to the "pre-

approval, however, the Commissioner has the continuing authority to disprove an insurance rate for noncompliance with the requirements of chapter thirty-three, article twenty. *See* W.Va.Code § 33–20–5(c) (1967) (Repl. Vol.2006). Besides the right to reexamine approved insurance rates that is statutorily extended to the Commissioner, an aggrieved person or organization has the right to demand a hearing for the purpose of challenging any insurance filing as being noncompliant with the statutory requirements that govern insurance rate setting. *See* W.Va. Code § 33–20–5(d).[21]

### C. Interrelation of CCPA with Insurance Statutes

At the center of this matter is disagreement as to the appropriate forum for challenging approved insurance rates. Because the Legislature has granted exclusive jurisdiction over matters of insurance rate setting to the Commissioner, CitiFinancial argues that any determination of whether approved insurance rates are excessive or unreasonable must be decided, at least in the first instance, by the Commissioner. Conversely, Respondent Lightner looks to the language in the Act creating a cause of action for excessive charges and maintains that the issue should be resolved in a judicial rather than an administrative forum. *See* W.Va. Code § 46A–5–101(1).

Turning to the position advocated by Respondent Lightner, we examine the basis for his assertion that a circuit court is the proper forum in which to address the issue of whether he was charged unreasonable and excessive amounts for credit insurance. As support for his contention, Respondent Lightner goes beyond the Act and relies upon lan-

guage added to the insurance statutes in 2002 in direct response to a decision issued by this Court interpreting statutes pertaining to premiums and policy exclusions.[22] Citing the language of West Virginia Code § 33–6–30(c) that accords approved insurance rates a presumption of statutory compliance, Respondent uses this language as the underpinning for judicial involvement in issues of insurance rate making. Through its creation of a cause of action permitting recovery of excess charges included in consumer transactions, Respondent maintains that the Legislature set in place a procedure by which the statutory presumption of compliance may be challenged in a judicial forum.[23]

■ To accept Respondent's position would require us to view the inclusion of the presumption language in West Virginia Code § 33–6–30(c) as express vitiation of the rate-making authority previously granted to the Commissioner in both the insurance statutes and in the Act itself. This construct is easily disassembled. Attempting to diminish the rate-making authority granted to the Commissioner, Respondent Lightner relies upon statutory language that, while having little significance to the issues presented here, only serves to underscore the Legislature's intent to remove issues involving insurance rates from the purview of judicial review. With its 2002 amendments to the statutory provision that addresses how insurance policies are to be construed, the Legislature was clear in its intent: The new provisions, including the presumption, were expressly adopted to curb what the Legislature perceived as judicial intrusion into issues of insurance rate setting. *See* W.Va.Code § 33–6–30(b).[24]

---

mium charged." W.Va.Code § 33–6–31(k); 208 W.Va. at 48, 537 S.E.2d at 894.

**21.** CitiFinancial emphasizes the fact that at no time has Respondent Lightner sought to avail himself of the procedural mechanism established under West Virginia Code § 33–20–5(d) for demanding a hearing before the Commissioner to challenge the insurance rates which are the subject of his pending counterclaims.

**22.** *See supra* note 20 (noting that 2002 amendments to W.Va.Code § 33–6–30 were expressly adopted to reflect Legislature's disapproval of this Court's ruling in *Mitchell v. Broadnax*).

**23.** It is significant to note that while the legislation creating a cause of action for a violation of the CCPA was enacted in 1974, the statutory language at issue creating the presumption of validity for approved insurance rates was not adopted until 2002. *Cf.* W.Va.Code § 46A–5–101 to § 33–6–30(c).

**24.** The entirety of the 2002 amendments to West Virginia Code § 33–6–30 are as follows:

(b) The Legislature finds:
(1) That consumers and insurers both benefit from the *legislative mandate that the Insurance Commissioner approve the forms used and*

Whether intended or not, the position advanced by Respondent Lightner has the end result of involving the judiciary in issues of insurance rate making. As evidenced by the data Respondent Lightner introduced to defeat CitiFinancial's motion for summary judgment, factual evidence on issues such as loss ratios and rates of return is required to disprove the reasonableness of an established insurance rate. These issues, due to their highly specialized nature, are typically reserved to the Commissioner's bailiwick. *See* W.Va.Code §§ 33–20–3; 33–20–4, 33–6–30(b). It stands to reason that if a circuit court is allowed to invade this administrative arena and reexamine the issue of whether a given insurance rate is reasonable or excessive, the judiciary will necessarily be substituting its determinations as to permissible insurance rates for those previously determined by the Commissioner and supplanting its opinion in matters expressly delegated to the Commissioner's expertise and jurisdiction. A further peril that cannot be overlooked is that judicial intervention in the rate making area would open the door to conflicting decisions amongst the various circuits regarding what constitutes an unreasonable or excessive charge for credit insurance. In this manner then, the uniformity of regulation that the Legislature has established by delegating all matters involving rate making and rate filings to the Commissioner is certain to be infringed if circuit courts or jurors are permitted to second guess the reasonableness of rates previously approved by the Commissioner.[25]

To support his theory that the judiciary has concurrent authority over issues of insurance rate making, Respondent Lightner argues that there is no statutory support for CitiFinancial's contention that the Commissioner has exclusive jurisdiction with regard

---

*the rates charged by insurance companies in this state;*

(2) That certain classes of persons are seeking refunds of insurance premiums and seeking to void exclusions and other policy provisions on the basis that insurance companies allegedly failed to provide or demonstrate a reduction in premiums charged in relation to certain terms or exclusions incorporated into policies of insurance;

(3) That historically, as a prerequisite to a rate or form being approved, neither the Legislature nor the Insurance Commissioner has ever required that the insurer demonstrate that there was a specific premium reduction for certain exclusions incorporated into policies of insurance;

(4) *That the provisions of this chapter were enacted with the intent of requiring the filing of all rates and forms with the Insurance Commissioner to enable the Insurance Commissioner to review and regulate rates and forms in a fair and consistent manner;*

(5) That the provisions of this chapter do not provide and were not intended to provide the basis for monetary damages in the form of premium refunds or partial premium refunds when the form used and the rates charged by the insurance company have been approved by the Insurance Commissioner;

(6) That actions seeking premium refunds or partial premium refunds have a severe and negative impact upon insurers operating in this state by imposing unexpected liabilities when insurers have relied upon the Insurance Commissioner's approval of the forms used and the rates charged insureds; and

(7) That it is in the best interest of the citizens of this state to ensure a stable insurance market.

(c) Nothing in this chapter may be construed as requiring specific line item premium discounts or rate adjustments corresponding to any exclusion, condition, definition, term or limitation in any policy of insurance, including policies incorporating statutorily mandated benefits or optional benefits which as a matter of law must be offered. Where any insurance policy form, including any endorsement thereto, has been approved by the commissioner, and the corresponding rate has been approved by the commissioner, there is a presumption that the policy forms and rate structure are in full compliance with the requirements of this chapter. *It is the intent of the Legislature that the amendments in this section enacted during the regular session of two thousand two are: (1) A clarification of existing law as previously enacted by the Legislature, including, but not limited to, the provisions of subsection (k), section thirty-one [§ 33–6–31] of this article; and, (2) specifically intended to clarify the law and correct a misinterpretation and misapplication of the law that was expressed in the holding of the Supreme Court of Appeals of West Virginia in the case of Mitchell v. Broadnax, 208 W.Va. 36, 537 S.E.2d 882 (2000). These amendments are a clarification of the existing law as previously enacted by this Legislature.* W.Va. § 33–6–30(b) (emphasis supplied).

**25.** Of further concern is the significant amount of time and resources that the Commissioner and his/her staff would be expending while participating in litigation before the various circuit courts of this state.

to such matters. We disagree. Under the comprehensive system established by the Legislature for purposes of regulating the insurance industry there is no question that the Commissioner is charged with overseeing the rates charged for various insurance products. *See* W.Va.Code § 33–20–3 (listing factors pertinent to insurance rate making); W.Va.Code § 33–20–4 (requiring that insurers comply with filing obligations); *see also* W.Va.Code § 33–6–8 (requiring Commissioner's approval of insurance-related forms). And, instead of reducing the Commissioner's authority over issues of insurance rate making, an examination of the CCPA demonstrates that the Legislature reaffirmed the Commissioner's authority over this regulatory area.

In the introductory language to West Virginia Code § 46A–3–109, the Legislature announced: "*[N]othing contained in this section with respect to insurance in any way limits the power and jurisdiction of the Insurance Commissioner of this state* in the premises[.]" W.Va.Code § 46A–3–109(a)(2) (emphasis supplied). After requiring that permissible charges in consumer transactions must be "reasonable in relation to the benefits," the Legislature made it mandatory that whenever the additional charge was for insurance this determination has to be made by the Commissioner:

> Provided, That as to insurance, the policy as distinguished from a certificate of coverage thereunder may only be issued by an individual licensed under the laws of this state to sell the insurance *and the determination of whether the charges therefor are reasonable in relation to the benefits shall be determined by the Insurance Commissioner of this state* [.]

W.Va.Code § 46A–3–109(a)(4) (emphasis supplied). To identify the amount that can be charged for credit-related insurance, the rate making authority of the Commissioner is called upon: "The premium or identifiable charge for the insurance required or obtained by a creditor may equal, but may not exceed the premium rate filed by the insurer with the Insurance Commissioner." W.Va. Code § 46A–3–109(b)(3). In the closing

paragraph of this statutory provision, the Legislature granted the Commissioner "exclusive" authority to promulgate legislative rules for the purpose of "implement[ing] the provisions of this article relating to insurance." W.Va.Code § 46A–3–109(c).

Not only are we unable to identify any provision in the Act that supports Respondent Lightner's contention that the Legislature intended to give circuit courts concurrent jurisdiction over issues of insurance rate making, we find to the contrary that the Act is replete with language indicating that the Commissioner's jurisdiction over insurance-related matters was not intended to be altered by the provisions of the CCPA. *See* W.Va.Code § 46A–3–109(a)(2), (a)(4), (b)(3), (c). As discussed above, the Legislature confirmed its grant of authority to the Commissioner to regulate the rate-making aspects of the insurance industry in each of these referenced statutory provisions. *See id.* Accordingly, we conclude that in providing for a cause of action that permits the recovery of excess charges included in a consumer credit transaction pursuant to the provisions of West Virginia Code § 46A–3–109 and § 46A–5–101, the Legislature did not authorize the circuit courts to invade the jurisdiction of the Commissioner and conduct a reexamination of insurance rates previously approved by the Commissioner.

 Rather than challenging the credit insurance rates through the filing of an action under the CCPA, Respondent Lightner should have sought relief under West Virginia Code § 33–20–5(d). That provision expressly provides the right to a hearing before the Commissioner for the purpose of challenging approved insurance rates. In explanation of his failure to seek such a hearing, Respondent Lightner asserts that he cannot be made whole through such an administrative challenge. While monetary damages cannot be awarded in connection with an administrative hearing held pursuant to West Virginia Code § 33–20–5(d), that provision is the procedural mechanism established by the Legislature for challenging insurance rates.[26] And, in our opinion, the

---

**26.** We are not persuaded by the argument Re-

spondent Lightner makes that any finding by the

absence of monetary damages does not suggest that an aggrieved party or organization who seeks to challenge insurance rates can bypass the administrative procedures expressly set in place for the purpose of questioning approved insurance rates.[27] Even if an individual seeks to pursue monetary relief under the Act, an administrative challenge should occur before recovery is sought under the Act for alleged excessive rate charges.[28] Accordingly, we hold that any challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33–20–5(d) in a proceeding before the Commissioner.[29]

■ Any ruling issued by the Commissioner on the issue of the reasonableness of insurance rates or compliance with statutory provisions is a final order that is subject to the provisions of the Administrative Procedures Act ("APA"). *See generally* W.Va. Code § 29A–5–1 to –5 (Repl.Vol.2007) (setting forth provisions for contested administrative matters); *see* C.S.R. § 114–13–8 (providing that every final order entered by Commissioner constitutes final order under APA which is appealable to circuit court); *see also* W.Va.Code § 33–2–13 (requiring Commissioner to hold hearings upon demand of aggrieved person). Consequently, judicial review of a determination by the Commissioner on the issue of whether insurance rates are reasonable and in compliance with statutory requirements does exist. Such review, however, occurs as a result of the APA and not, as Respondent Lightner sought, through filing a cause of action under the CCPA.

■ As discussed above, the inclusion of the statutory language that creates a presumption of compliance occurred as part of the Legislature's attempt to strengthen the rate making powers of the Commissioner. *See* W.Va.Code § 33–6–30(b), (c) (2002 amends). Through its adoption of this statutory language, the Legislature established a procedural mechanism by which insurance rates are presumed to be in compliance with all regulatory requirements upon their approval by the Commissioner. While approved insurance rates are still subject to challenge, the burden for disproving the validity of such rates is placed on the entity who seeks to set the rates aside. *See* W.Va. Code § 33–20–5(d). Respondent Lightner argues that he should be able to challenge this presumption as part of his cause of action under the CCPA before the circuit court. The inclusion of the presumption within the insurance statutes and as part of legislation specifically enacted to prevent judicial reexamination of approved insurance rates suggests just the opposite. Consequently, we are of the opinion that the presump-

Commissioner that an insurance rate does not meet the requirements of chapter 33 of the West Virginia Code is meaningless because such rulings are necessarily prospective in effect. *See* W.Va.Code § 33–20–5(d) (providing that Commissioner shall set reasonable date for effecting any rate disapproval and specifying that any such directive "shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order"). Given the contractual nature of insurance policies, it stands to reason that any rulings that disapprove specific insurance rates can only have a prospective effect. Moreover, there is nothing that prevents an aggrieved party from seeking monetary relief under the Act for excess charges after a rate charge has been found not to comply with the requirements for assessing such charges.

**27.** We recognize the concern raised by Respondent Lightner that requiring the administrative challenge prior to instituting an action for excessive credit charges under the Act is a piecemeal and inefficient method of addressing these issues.

This is, however, the system the Legislature has put in place for challenging insurance rates.

**28.** An obvious exception to the requirement of first seeking a hearing before the Commissioner to establish an excessive charge would be those instances where an insurer charged a rate that was above the amount on file with or authorized by the Commissioner. It is arguable that the cause of action established through West Virginia Code §§ 46A–3–109 and 46A–5–101 was intended to cover instances of wrongful or unconscionable charges rather than inviting any ongoing inquiry into the reasonableness of insurance charges. *See, e.g., Dunlap v. Friedman's, Inc.,* 213 W.Va. 394, 399, 582 S.E.2d 841, 846 (2003) (recognizing purpose of CCPA as protection of consumers from unfair, illegal, or deceptive acts).

**29.** In the event that we are misinterpreting the Legislature's intent with regard to the forum in which an insurance rate is to be challenged, the Legislature may clarify this issue.

tion of statutory compliance for approved insurance rates set forth in West Virginia Code § 33–6–30(c) may only be rebutted in a proceeding before the Commissioner.

Based on the foregoing discussion, we find the necessary grounds [30] for issuing a writ of prohibition to prevent the enforcement of the May 6, 2008, order of the Circuit Court of Marshall County denying partial summary judgment to CitiFinancial with regard to the claims pending against it for alleged unreasonable and excessive credit insurance charges. Accordingly, the writ of prohibition sought by CitiFinancial is granted.

Writ granted.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

**30.** As the predicate basis for our issuance of a writ of prohibition in this case, we rely on the fifth factor set forth in *Berger* which concerns the need to resolve issues that present matters of first impression. *See* 199 W.Va. 12, 483 S.E.2d 12, syl. pt. 4.