IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 12-0566

_____

FILED

**June 4, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

PAUL W. LIGHTNER,
Plaintiff Below, Petitioner

v.

MICHAEL D. RILEY, WEST VIRGINIA INSURANCE COMMISSIONER;
CITIFINANCIAL, INC. and TRITON INSURANCE COMPANY,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 10-AA-76

AFFIRMED

_____

Submitted: January 15, 2014
Filed: June 4, 2014

Christopher J. Regan, Esq.
James G. Bordas, Jr., Esq.
Jason E. Causey, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia

Jonathan Bridges, Esq.
*Pro Hac Vice*
Susman Godfrey LLP
Dallas, Texas
Counsel for the Petitioner

Jeffrey M. Wakefield, Esq.
Thomas V. Flaherty, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Counsel for Respondents CitiFinancial, Inc.
and Triton Insurance Company

Andrew R. Pauley, Esq.
Offices of the West Virginia Insurance
Commissioner
Charleston, West Virginia
Counsel for the Respondent West Virginia
Insurance Commissioner

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "In providing for a cause of action that permits the recovery of excess charges included in a consumer credit transaction pursuant to the provisions of West Virginia Code § 46A–3–109 (1998) (Repl.Vol.2006) and § 46A–5–101 (1996) (Repl.Vol.2006), the Legislature did not authorize the circuit courts to invade the jurisdiction of the Insurance Commissioner and conduct a reexamination of insurance rates previously approved by the Commissioner." Syllabus Point 2, *State ex rel. CitiFinancial v. Madden*, 223 W. Va. 229, 672 S.E.2d 365 (2008).

2. "Any challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33–20–5(d) (1967) (Repl.Vol.2006) in a proceeding before the Insurance Commissioner." Syllabus Point 3, *State ex rel. CitiFinancial v. Madden*, 223 W. Va. 229, 672 S.E.2d 365 (2008).

3. "The presumption of statutory compliance for approved insurance rates set forth in West Virginia Code § 33–6–30(c) (2002) (Repl.Vol.2006) may only be rebutted in a proceeding before the Insurance Commissioner." Syllabus Point 4, *State ex rel. CitiFinancial v. Madden*, 223 W. Va. 229, 672 S.E.2d 365 (2008).

4. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4[ (g) ] and

reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

5. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 537 S.E.2d 676 (1999).

6. "Applicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation." Syllabus Point 2, *North v. Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977).

Per Curiam:

This case is before the Court upon the appeal of Paul W. Lightner, Petitioner, from a March 26, 2012, order of the Circuit Court of Kanawha County affirming the decision of the West Virginia Insurance Commissioner ("Insurance Commissioner"), which found that the rates charged by Respondents, CitiFinancial and Triton Insurance Company, were reasonable. Herein, Lightner alleges that the circuit court erred in upholding the order of the Insurance Commissioner because it refused Lightner a hearing in violation of both *State ex rel. CitiFinancial v. Madden*, 223 W. Va. 229, 672 S.E.2d 365 (2008), and express statutory language requiring such a hearing, and because the Commissioner denied Lightner other due process rights as well. Additionally, Lightner asserts that the circuit court's order shows a clear error of law, is clearly wrong, and was arbitrary and capricious because it presumed, unrebuttably, that the approved insurance rates were reasonable. Conversely, Respondent Insurance Commissioner[1] contends that the circuit court did not err in upholding its order denying a hearing because an administrative hearing would serve no useful purpose and Lightner did not have an automatic right to a hearing. Respondents CitiFinancial and Triton assert

---

[1] When the instant appeal was originally filed, Jane L. Cline, was the appointed Insurance Commissioner. She subsequently retired on June 30, 2011. Michael D. Riley was appointed as Acting Insurance Commissioner on July 1, 2011, and subsequently named Insurance Commissioner on January 9, 2012. Therefore, pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, Michael Riley, in his official capacity as Insurance Commissioner, has been substituted as a party in this appeal. He will be referred to as the Insurance Commissioner throughout the Opinion although many of the actions were taken by his predecessor, Ms. Cline.

1

that the circuit court properly concluded that the Insurance Commission's handling of the rate issues raised in Lightner's complaint met statutory, regulatory and constitutional standards. As set forth more fully below, we affirm the circuit court's order.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second time this case has been before this Court. This matter originated in the Circuit Court of Marshall County, West Virginia in 2002 when CitiFinancial instituted a civil action against Mr. Lightner following his default on a $6,500 loan. Lightner filed an amended counterclaim in January 2004 alleging that CitiFinancial violated the finance charge provisions of the West Virginia Consumer Credit Protection Act, W. Va. Code § 46A-3-109 and § 46A-5-101 by charging unreasonable and excessive amounts for credit insurance for two other loans Lightner obtained from CitiFinancial in 2001. In October 2006, Lightner sought to expand his claim for unreasonable and excessive credit insurance charges into a class action to include additional individuals who obtained loans from CitiFinancial over a fourteen-year period.

The nature of the underlying dispute and the procedural history of this matter while it was pending in the Circuit Court of Marshall County are set forth in detail in *State ex rel. CitiFinancial v. Madden*, 223 W. Va. 229, 672 S.E.2d 365 (2009), wherein CitiFinancial filed a writ of prohibition to prevent the circuit court from

2

enforcing its denial of CitiFinancial's motion for partial summary judgment. CitiFinancial sought a dismissal of the claims pending against it, or alternatively, sought a stay of the underlying matter until the Insurance Commissioner made a determination regarding whether any of the credit insurance charges assessed by CitiFinancial against Lightner were either excessive or unreasonable. This Court granted CitiFinancial's writ of prohibition and found in syllabus point 2 that,

> [i]n providing for a cause of action that permits the recovery of excess charges included in a consumer credit transaction pursuant to the provisions of West Virginia Code § 46A–3–109 (1998) (Repl.Vol.2006) and § 46A–5–101 (1996) (Repl.Vol.2006), the Legislature did not authorize the circuit courts to invade the jurisdiction of the Insurance Commissioner and conduct a reexamination of insurance rates previously approved by the Commissioner.

*Id.*, syl. pt. 2. In syllabus point 3, we held that,

> [a]ny challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33–20–5(d) (1967) (Repl.Vol.2006) in a proceeding before the Insurance Commissioner.

*Id.*, syl. pt. 3. Finally, in syllabus point 4, this Court stated that "[t]he presumption of statutory compliance for approved insurance rates set forth in West Virginia Code § 33–6–30(c) (2002) (Repl. Vol. 2006) may only be rebutted in a proceeding before the Insurance Commissioner." *Id.*, syl. pt. 4.[2]

---

[2] The portion of the circuit court's May 12, 2008, order certifying a class action was subsequently vacated by the circuit court following this Court's opinion in *Madden*, 223 W. Va. 229, 672 S.E.2d 365, and all remaining claims were stayed pending notification (continued . . .)

3

Subsequently, on or about September 29, 2009, Lightner filed a consumer complaint before the Insurance Commissioner against CitiFinancial and Triton.[3] The Complaint was filed on behalf of himself and other policyholders and challenged the rates for certain insurance products known as credit property insurance[4] and credit involuntary unemployment insurance.[5] The Complaint alleged that historically low loss ratios incurred by Triton as opposed to projections and filings were indicative of excessive rates and therefore in violation of the Insurance Code.[6] The Complaint also

---

by Lightner of the results of the administrative proceeding before the Insurance Commissioner.

[3] The Consumer Complaint named CitiFinancial and Triton as Respondents because Triton was the insurer that issued the applicable policies for credit property and credit involuntary unemployment insurance sold by CitiFinancial.

[4] Credit personal property insurance is defined as

> a policy, endorsement, rider, binder, certificate or other instrument or evidence of insurance written in connection with a credit transaction that: a. Covers perils to the goods purchased through a credit transaction or used as collateral for a credit transaction and that concerns a creditor's interest in the purchased goods or pledged collateral either in whole or in part; or b. Covers perils to goods purchased in connection with an open-end credit transaction.

W.Va. Code St. R. § 114-61-2.6 (2003).

[5] Involuntary unemployment insurance is generally defined as insurance covering a loss associated with inability to pay a debt subject to loss of employment involuntarily.

[6] Lightner asserted that as a minimum benchmark, both the regulations and industry standards currently require credit insurance rates to result in 50% or greater loss ratios, at (continued . . .)

4

asserted that Triton was not forthcoming with relevant information provided in filings made to the Commissioner which should, in turn, cause the filings to be rejected. Lightner requested a hearing pursuant to W.Va. Code § 33-2-13 (1957), W.Va. Code § 33-20-5(d) (1967), and W.Va. C.S.R. § 114-13-1, *et seq.* (2003). Lightner also sought an order from the Commissioner withdrawing approval for the rate filings of Triton over a period of fourteen years.

By letter dated November 13, 2009, the Commissioner advised that he wanted to investigate the issues raised in the Complaint for a ninety day period after which the Commissioner would make the following decisions: (1) whether to appoint a hearing examiner to hear issues in the matter; (2) whether to intervene in the matter; and/or (3) whether to take a final position on potentially denying a hearing in the matter on the substantive issues.

The Commissioner then undertook an investigation and analysis of not only Lightner's allegations, but all of Triton's rate filings in West Virginia, pursuant to W.Va. Code § 33-2-3a (2007) and W.Va. Code § 33-2-9 (2006). During the Commissioner's

a minimum, while 60% is a more commonly used benchmark. See 114 C.S.R. § 61-6.2 (credit property 60%); NAIC Model Laws, Regulations & Guidelines §§ 365-1-7 (credit property 60%); § 370-1-8 (credit involuntary unemployment 60%). Lightner maintains that CitiFinancial's internally reported loss ratios on its West Virginia credit property averaged 25.6% annually for the period 1994-2006, and its credit involuntary unemployment averaged 15.8% annually for the same period.

investigation, a data call was requested from Triton which resulted in the production of thousands of documents. During the course of the investigation, the Commissioner and representatives of Triton had discussions concerning the information supplied and the impact of the information on the Commissioner's investigation. Lightner was likewise afforded the opportunity to provide additional information and argument in support of his position. In support of his allegations, Lightner supplied reports from insurance departments in California and Arizona concerning credit property and unemployment insurance and submitted a slide presentation entitled "Summary of the Evidence."[7] Lightner also supplied a letter from the Texas Insurance Commissioner dated May 17, 1999, disapproving the rates charged by Triton of $5.40 per $100 as "excessive because it is unreasonably high in relation to the prospective loss experience and because it includes an excessive margin for profit and contingencies." Lightner also submitted an e-mail to the Commissioner indicating that he was unable to find a benchmark or minimum loss ratio for credit property or credit unemployment insurance in the State of Texas.

---

[7] A 2002 report from the Rate Specialist Bureau of the California Department of Insurance concluded that the rate level for credit property insurance could be "reduced by 87.30%. This would result in the consumer saving $34 million per year in overcharged premiums, if the presumptive 60% loss ratio standard is imposed." As for credit unemployment insurance, the California Department of Insurance found that the rates could be "reduced by 87.47%. This would mean a saving of $116.5 million per year, if the presumptive 60% loss ratio standard is imposed." Arizona likewise issued a data call of Triton and other insurers and found in a 2003 report that CitiFinancial's credit property rate of $2.30 per $100, which Lightner alleges was more than four times the indicated rate that the Department recommended to produce a loss ratio approximating the minimum standard of 50%.

6

The Commissioner also retained the services of an independent actuary, Hause Actuarial Solutions, Inc., to review the filings of Triton. The actuary was asked to comment on whether the filings were complete and whether the loss ratio, expense and profit components of the rate were reasonable and typical for the coverages provided. It issued a report dated March 29, 2010, finding that the premium components were "very much in line with similar filings, by this insurer and other insurers providing [involuntary unemployment] and [credit property] in states where the rate is not specified by law or regulation."

Following the Commissioner's investigation and consideration of Lightner's Complaint, the Commissioner filed an order on April 5, 2010, denying Lightner's request for a hearing. The Commissioner made the following findings of fact: (1) during the period contained in the Complainant's administrative complaint, Triton did not write credit property or credit involuntary unemployment insurance wherein any rule was in effect concerning benchmark minimum loss ratio standards for writing either product in the State of West Virginia; (2) both parties were able to provide relevant information, data or other comment concerning their respective positions as a part of the Commissioner fulfilling his duties under W.Va. Code § 33-20-5(c) (1967); (3) no duty [is] placed upon insurers offering insurance as referenced in the Complaint to re-file rates once approved where there is no change in circumstances of the original filing; (4) rates filed by insurance companies in other states are neither necessary relevant nor dispositive as to what a rate should be in West Virginia; and (5) historically low loss ratios in

7

relation to what is filed as anticipated loss ratios with the Commissioner concerning credit property and/or credit involuntary unemployment insurance do not by themselves constitute an excessive rate violation in that claim ratios have been known to fluctuate widely from company to company, state to state, and year to year.

The Commissioner also made the following conclusions of law: (1) that Triton did comply with W.Va. Code § 33-20-3 (2006) in its filings and that Triton's rate filings did not violate W.Va. Code § 33-20-3; (2) that there "is no factual dispute as concerning the filing and approval of the rates and forms of Triton Insurance Company" and that the rates charged by Triton were reasonable in relation to the benefits provided;[8] and (3) that a hearing upon the administrative complaint would serve no useful purpose and, therefore, the request for a hearing was denied.

On May 5, 2010, Lightner filed a petition appealing the Commissioner's April 5, 2010, order pursuant to W.Va. Code § 29A-5-4(a) (1998) and W.Va. Code § 33-2-14 (1957) in the Circuit Court of Kanawha County. In his petition, Lightner requested that the circuit court conduct a hearing, permit discovery, take evidence, hear argument and rule on the issues presented. Lightner contended that the Commissioner erroneously concluded that Lightner was not entitled to a hearing in connection with the claims in his

---

[8] The Commissioner's Order details each of the five filings made by Triton during the time periods at issue in this case, finding that the filings were reasonably complete and typical for this type of product filing.

8

consumer complaint; that the Commissioner erroneously concluded that the Insurance Code permits him to deny a hearing to an aggrieved individual who demands one; that the Commissioner failed to require Triton to provide Lightner with all "pertinent information" concerning the rates at issue as required by the Insurance Code; and that the Commissioner erroneously found that Triton's credit property and credit involuntary employment insurance charges were not excessive and were reasonable in relation to the benefits provided.

CitiFinancial and Triton responded to the petition on September 22, 2010, maintaining that Triton's rates were thoroughly reviewed and analyzed in full compliance with statutory and regulatory requirements; that Lightner has no automatic right to a formal hearing before the Commissioner; that Lightner's claim of unreasonable rates was the subject of a proceeding which met statutory and constitutional requirements; and that Lightner is not entitled to present evidence or conduct discovery.

The Insurance Commissioner responded to Lightner's petition contending that Lightner was not entitled to a hearing as a matter of right; that no definitive benchmark was or is in place with respect to what loss ratios should be for credit property and involuntary unemployment insurance; that the Commissioner fulfilled his statutory duties concerning the consumer complaint; that the model rules of the National Association of Insurance Commissioners are neither binding nor persuasive; and that

9

Lightner had more than ample opportunity to present his claims in multiple forums over a number of years.

Following briefing by the parties and oral argument, on March 26, 2012, the Circuit Court entered its order affirming the Insurance Commissioner's order denying Lightner's request for a hearing. The circuit court found that the Commissioner's handling of the issues raised in Lightner's consumer complaint was appropriate and that there was nothing in the record to support the contention that the Commissioner violated or acted in excess of statutory authority.

## II.

## STANDARD OF REVIEW

This case involves an appeal of an administrative order. Our standard for reviewing an administrative appeal is the same as that applied to the circuit court, which is controlled by the provisions of W.Va. Code, § 29A–5–4(g) (1998).[9] As we held in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996):

---

[9] West Virginia Code § 29A-5-4(g) provides,

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(continued . . .)

10

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4[ (g) ] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

196 W.Va. at 590, 474 S.E.2d at 520.

With these standards in mind, we proceed to consider whether the circuit court committed error in affirming the decision of the Insurance Commissioner.

## III.

## ANALYSIS

First, Lightner alleges that the circuit court erred in upholding the Insurance Commissioner's order because the Insurance Commissioner refused Lightner a hearing in

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W.Va. Code § 29A–5–4(g).

11

violation of both *State ex rel. CitiFinancial v. Madden*, 223 W. Va. 229, 672 S.E.2d 365, and express statutory language requiring such a hearing. Specifically, Lightner argues that he was entitled to a hearing under W. Va. Code § 33-2-13. This statute provides, in pertinent part, that the Commissioner

> shall hold hearings when required by the provisions of this chapter or upon a written demand therefore by a person aggrieved by any act or failure to act by the commissioner or by any rule, regulation or order of the commissioner.
>
> . . .
>
> The commissioner shall allow any person directly affected by the hearing to appear in person and by counsel, to be present during the giving of all evidence, to have a reasonable opportunity to inspect all documentary evidence, to examine witnesses and present relevant evidence, and to have subpoenas issued by the commissioner to compel attendance of witnesses and production of evidence on his behalf.

W. Va. Code § 33-2-13.

Lightner also contends that the Commissioner ignored his rights under W. Va. Code § 33-20-9 to obtain all pertinent information from CitiFinancial regarding the rates at issue, and disregarded all of the publically available CitiFinancial data presented by Lightner. Lightner maintains that the Commissioner offers no data or evidence of his own in support of his conclusion that the CitiFinancial rates are reasonable in relation to the benefits provided, and that the circuit court's order adds nothing to the findings of the Commissioner.

12

Conversely, CitiFinancial and Triton assert that the standard of review compels affirmance of the circuit court and Commissioner's order, as the circuit court properly concluded that the Commissioner's handling of the rate issues raised in the complaint met statutory, regulatory, and constitutional standards. They maintain that the Commissioner conducted a ninety-day investigation, which produced thousands of pages of documents and data, obtained documents from Lightner, and obtained an independent actuarial opinion. The Commissioner echoes the Respondent insurance companies' arguments, maintaining that the circuit court did not err in upholding its order denying a hearing on the grounds that it would serve no useful purpose and finding that the rates charged by Triton were reasonable. After a thorough review of the record before us, we agree with the Respondents' contentions and find that the circuit court's order should be affirmed.

Challenges to an existing approved rate of insurance are addressed in W.Va. Code § 33-20-5(d). The statute provides:

> (d) Any person or organization aggrieved with respect to any filing which is in effect may demand a hearing thereon. If, after such hearing, the Commissioner finds that the filing does not meet the requirements of this article, he shall issue an order specifying in what respects he finds that such filing fails to meet the requirements of this article, in stating when, within a reasonable period thereafter, such filing shall be deemed no longer affective. Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order.

13

This statute does not specifically state that a hearing shall be provided with respect to any filing in effect. While Lightner cites to W.Va. Code § 33-2-13 as conferring an absolute right to a hearing, that statute must be read in conjunction with other statutes and regulations relating to hearings. West Virginia Code § 33-20-5(d) and W.Va. Code § 33-2-13 are not the only statutes which address whether the Commissioner is required to provide a hearing. W.Va. Code § 33-2-14, one of the statutes upon which Lightner relied in filing his petition for appeal in the Circuit Court, specifically provides that "[an appeal from the Commissioner shall be taken from an order entered after a hearing or an order *refusing a hearing*." (emphasis supplied). "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 537 S.E.2d 676 (1999) (*quoting* Syl. Pt. 2, T. *Weston v. Mineral City*, 219 W.Va. 564, 638 S.E.2d 167 (2008)). "Each word of a statute should be given some effect and a statute should be construed in accordance with the import of its language." Syl. Pt. 6, in part, *State ex rel. Cohen v Mansion*, 175 W.Va. 525, 336 S.E.2d 171 (1984). Most importantly, a court may not interpret a statute such that the result is to make the statute meaningless since one of the basic principles of statutory construction is that the Legislature will not enact a meaningless statute. *See State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

14

Lightner's interpretation of the statutory scheme, which would require a hearing anytime a demand is made, would create the unwieldy result that all aggrieved persons are entitled to a formal hearing by the mere filing of any complaint and making a demand. It would also render the language of the Insurance Code appeal statute, W.Va. Code § 33-2-14, meaningless to the extent that it provides that a right of appeal exists as to any order in which the Commissioner refuses a hearing.

It is also significant that the right of the Commissioner to determine whether a hearing will serve a useful purpose is also embedded in the legislative Rules promulgated by the Commissioner pursuant to statutory authority. W.Va. Code St. R. § 114-13-3 states:

> 3.3. Hearing on written demand.
>
> When the commissioner is presented with a demand for a hearing as described in subsections 3.1 and 3.2 of this section, he or she shall conduct a hearing within forty-five (45) days of receipt by him or her of such written demand, unless postponed to a later date by mutual agreement. However, if the commissioner shall determine that the hearing demanded:
>
> a. Would involve an exercise of authority in excess of that available to him or her under law; or
>
> b. Would serve no useful purpose, the commissioner shall, within forty-five (45) days of receipt of such demand, enter an order refusing to grant the hearing as requested, incorporating therein his or her reasons for such refusal. Appeal may be taken from such order as provided in W. Va. Code § 33-2-14.

Lightner's argument that the circuit court order conflicts with this Court's holding in *CitiFinancial Inc. v. Madden* is also incorrect. In *Madden*, we did not hold that a formal hearing was unquestionably available. Rather, we found that the process found in West Virginia Code § 33-20-5(d) had to be utilized by any aggrieved person. As stated in Syllabus Point 3 in *Madden*, "[a]ny challenges to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of W.Va. Code § 33-20-5(d) (1967) (Repl.Vol.2006) in a proceeding before the Insurance Commissioner." This Court did not indicate that a formal hearing was necessary.

More recently, in *West Virginia Employers' Mutual Insurance Company v. The Bunch Company*, 231 W. Va. 321, 745 S.E.2d 212 (2013), a similar case regarding the issue of whether a grievant should have been provided the opportunity to have a hearing before the Insurance Commissioner, this Court specifically recognized that "the Commissioner has the authority pursuant to legislative rule to refuse a request for a hearing upon the determination that a hearing '[w]ould serve no useful purpose.' 114 C.S.R. § 13-3.3.b." *Id.,* 231 W. Va. at 333, 745 S.E.2d at 224.

In the instant case, the complaint was unquestionably the subject of a proceeding which resulted in the April 2010 order and the independent investigation conducted by the Commissioner. The record reveals that the Commissioner communicated his decision to independently investigate the issues raised in the complaint in a letter dated November 13, 2009. In the letter, the Commissioner advised that he

16

wanted a ninety day period to investigate the issues raised in the Complaint following which the Commissioner would decide whether to appoint a hearing examiner, whether to intervene in the matter and/or whether to take a final position on potentially denying a hearing in the matter on substantive issues.[10]  The Commissioner also requested an

---

[10] The Commissioner's letter discussed the unique circumstances that the case presented and explained, in part, that

> The complainants in this matter have demanded a hearing within 45 days of filing the administrative complaint with the Commissioner.  For the reasons cited herein, we do believe that time frame to be applicable to this matter nor binding on the Commissioner.  Some of our considerations would center on the following: (1) the demand for a hearing cited in W. Va. Code § 33-20-5(d) and W. Va. Code 33-2-13 are provided generally for singular issues concerning disputes of parties wherein the Commissioner does not generally take a position and has not had any previous involvement.  That is simply not the case in this dispute.  We are not looking at a single isolated occurrence between two parties such as a loss on a claim, denial of a single claim, or deprivation of a license.  The complainant's attorney argues that over 130,000 policyholders are affected and seeks a review of over 15 years of data.  It is not reasonable to expect the Insurance Commissioner, as an administrative body, to handle such a large and voluminous request in 45 days when such a matter could be involved in circuit court litigation for years at best simply in the discovery phases.  (2) While a hearing can be demanded, West Virginia Code of State Rules 114-13-3.3(b) allows the Commissioner to deny a hearing for serving no useful purpose.  We believe at this point to force a hearing in such a complex and broad matter as this, would simply serve no useful purpose.  The Commissioner is charged with many responsibilities under the Code.  At times, she is a quasi-judicial body merely holding hearings and takes no particular position in the outcome of the dispute among parties.  At other times, she is the enforcement regulator who is directly involved in the matter as the civil prosecutor and thereby

(continued . . .)

17

agreement by the parties to this extension of time for the Commissioner to conduct the investigation. Lightner provided only provisional consent and insisted that any extension of time by which a hearing could be conducted had to be conditioned upon an agreement by the Commissioner to actually conduct a hearing. The Commissioner did not agree to conduct a hearing and it was clear that whether a hearing would be held was an issue for subsequent resolution.

Over the next several months, the Commissioner conducted his investigation. He compelled Triton to produce thousands of pages of documents and data. He also requested and received information from Lightner including allowing Lightner to provide a "summary of the evidence" which Lightner maintains supported a conclusion that the rates charged were unreasonable.[11] The Commissioner also obtained an independent actuarial opinion from Hause Actuarial Solutions, Inc. which reflected that the rates were reasonable and in accord with similar filings of other insurers providing

---

> pursues matters on the State's behalf. This current administrative complaint cannot simply be handled through a consumer complaint process. This matter must be thoroughly reviewed and investigated. The parties in this dispute cannot simply close the inquiry by settling it. The Commissioner having had it brought to her attention must perform her statutory and legal duties. Therefore, the Commissioner needs to review and investigate the matter before she acts. . . .

[11] See footnote 7, *supra*.

involuntary unemployment and credit property in states where the rate is not specified by law or regulation.

Following his investigation and review of the additional submissions filed by Lightner's counsel, the Commissioner issued an order finding that there was no rule in effect setting forth benchmark minimum loss ratio standards for either credit property or involuntary unemployment insurance during the time period those products were offered. He also concluded that the filings made by Triton were complete and approved on a perspective basis at the time of filing; that Triton did in fact comply with the provisions of W. Va. Code § 33-20-3 with respect to its filing; and that the rates charged by Triton were reasonable in relation to the benefits provided.

West Virginia adopted a credit property rule dealing with benchmark loss ratios in 2003 and adopted a rule regarding involuntary unemployment insurance only in 2011. Respondents CitiFinancial and Triton stopped writing credit property insurance prior to those benchmarks. Thus, the applicable standard in this case is the language in West Virginia Code § 33-20-3 (1957), which states:

> All rates shall be made in accordance with the following provisions:
>
> (a)   Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to

19

past and prospective expenses both countrywide and those specially applicable to this state and to all other relevant factors within and outside this state.

(b) Rates may not be excessive, inadequate or unfairly discriminatory.

Due to the population size of West Virginia, the competition of insurers and premium volume, the Commissioner must not rely solely on external data in coming to conclusions on filings. There was no benchmark under the law to ascertain reasonable profits in this case. Lightner complains of due process violations but would have the Insurance Commissioner take civil regulatory action against the insurance respondents for unspecified violations where the Legislature has not spoken on these issues.[12] We

---

[12] We cannot agree with Lightner's contentions that the proceeding before the Insurance Commissioner lacked due process. The proceeding satisfies the due process requirements set forth in *North v. West Virginia Bd. of Regents*, 160 W. Va. 248, 233 S.E.2d 411 (1977). In *North*, we held that

"[a]pplicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation."

*Id.*, Syl. Pt. 2.

(continued . . .)

find that the Commissioner performed due diligence and questioned the rate filings, but he received adequate documentation and explanation from Triton prior to approving the rates from 1994 through 2003. While Lightner cites to Insurance Commissioner decisions in other jurisdictions in an attempt to show that Triton's rates were unreasonable, he fails to note that in those other states, there was a benchmark in place. Accordingly, we affirm the circuit court's finding that the rates charged by Triton were reasonable.

Furthermore, Lightner's brief fails to identify any evidence that he was prevented from presenting to the Commissioner. Lightner references two affidavits from Michael Scruggs and Hanley Clark that support a contention that the rates were unreasonable.[13] However, neither of these affidavits was submitted or prepared until

Here, Lightner paid his premium and was provided the requisite coverage. Additionally, where the rate has been approved there is a presumption that the policy forms and rate structure are in full compliance with the requirements of Chapter 33 of the West Virginia Code. W. Va. Code § 33-6-30(c) (2002). The burden of holding a hearing to examine filings approved eighteen years ago would be great whereas the benefit to West Virginia consumers would be minimal. Moreover, the protracted delay would create problems with evidence and proof in a hearing. The Commissioner's process and order revealed the analysis, investigation, and conclusions of law in a transparent fashion and the commissioner did not abuse his discretion.

[13] Following entry of the Commissioner's order, Lightner submitted to the circuit court the affidavit of an expert actuary, Michael Scruggs, who opined that Triton had omitted from consideration its loss experience on the same or similar lines of business and distinguished that loss experience as being a "new program." Lightner also submitted Former Insurance Commissioner Hanley Clark's affidavit, which states, "[i]f I had known, during my tenure at the Office of the Insurance Commissioner, that the historical loss ratios for the subject credit insurance lines were as set out above, I would have disapproved the rates and required support for such rates."

21

after the entry of the Commissioner's order. Thus, there was no way for the Commissioner to consider those documents prior to the entry of the order.

Lightner has had ample opportunity to present his issues in multiple forums over the years and discovery has been exchanged by all parties. Lightner provided thousands of pages to the Commissioner's investigation. He has clearly raised his arguments and put forth his evidence. For all these reasons, we find that the Commissioner's decision that a hearing was unnecessary in this particular matter was not an abuse of its discretion. While this Court recognized in *Bunch* that there are instances involving an alleged deviation from approved rate filings where a factual dispute exists requiring an administrative hearing to be held, this case did not present any factual disputes warranting a hearing in this case.

## IV.

## CONCLUSION

Accordingly, the March 26, 2012, order of the Circuit Court of Kanawha County is affirmed.

**Affirmed.**

22